LIBERTY MUTUAL INSURANCE CO. v. JUDY BASS PENNINGTON
AND RICK PENNINGTON

No. 185PA01

(Filed 20 December 2002)

### 1. Insurance— automobile—UIM—notification—statute of limitations

Under N.C.G.S. § 20-279.21(b)(4), there is no requirement that a UIM carrier be notified of a claim within the limitations period applicable to the underlying tort action. The language of the statute is clear, and nothing therein suggests that the notifi-cation requirement is subject to the statute of limitations.

### 2. Insurance— automobile—UIM—statute of limitations— action deriving from tort rather than statute

The limitations period for actions on statutory liabilities does not apply to defendant's claim for UIM coverage because the car-rier's liability derives from that of the tortfeasor.

### 3. Insurance— automobile—UIM—failure to notify carrier of claim—good faith—material prejudice—issues of fact

The trial court erred by granting summary judgment for plain-tiff in an action to determine UIM coverage where the issue of whether defendants are barred through failure to comply with notice provisions of the policy is not ripe. There were issues of fact as to whether defendants acted in good faith in failing to promptly notify plaintiff of the UIM claim and whether there was material prejudice to plaintiff's ability to investigate and defend the claim.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) of a unani-mous decision of the Court of Appeals, 141 N.C. App. 495, 541 S.E.2d

LIBERTY MUT. INS. CO. v. PENNINGTON

[356 N.C. 571 (2002)]

503 (2000), reversing and remanding an order for summary judgment entered 24 August 1999 by Farmer, J., in Superior Court, Wake County. Heard in the Supreme Court 16 October 2001.

*Cranfill, Sumner & Hartzog, L.L.P., by Edward C. LeCarpentier III, for plaintiff-appellant.*

*Thompson, Smyth & Cioffi, L.L.P., by Theodore B. Smyth; and Pipkin, Knott, Clark and Berger, LLP, by Joe T. Knott, III, for defendant-appellees.*

BUTTERFIELD, Justice.

Plaintiff Liberty Mutual Insurance Company instituted this action for declaratory judgment seeking an affirmation that the insurance policy issued to defendants Judy and Rick Pennington afforded defendants no underinsured motorist (UIM) coverage for injuries arising out of an automobile accident involving Judy Pennington and an underinsured motorist. The underlying facts are as follows: Judy Pennington and her daughter, Christy, were injured on 9 December 1993, when a truck driven by Clee Earp and owned by Blackburn Logging Company caused Judy's vehicle to collide with other vehicles. At the time of the accident, defendants were insured under an automobile liability policy issued by plaintiff, which provided UIM coverage pursuant to the provisions of N.C.G.S. § 20-279.21(b)(4).

On 5 June 1996, the Penningtons brought an action against Earp and Blackburn Logging (collectively, the tortfeasors) to recover damages for personal injuries sustained in the 9 December 1993 accident. The case underwent court-ordered mediation on 10 December 1997, at which time the Penningtons learned for the first time that $25,000/$50,000 were the limits of liability on the policy covering Blackburn Logging. The parties thereafter reached a tentative mediated settlement agreement wherein the tortfeasors' insurance provider agreed to tender its policy limits. However, immediately following the mediation, the Penningtons notified Liberty Mutual that they intended to seek coverage under their $50,000/$100,000 UIM policy because the liability limits under the tortfeasors' policy were insufficient to fully compensate the Penningtons for their damages. Prior to that time, the Penningtons had not informed Liberty Mutual of their personal injury action against the tortfeasors.

On 22 December 1997, the Penningtons' attorney sent written notice of the proposed settlement agreement to Liberty Mutual.

LIBERTY MUT. INS. CO. v. PENNINGTON

[356 N.C. 571 (2002)]

Liberty Mutual chose not to review the settlement documents or to advance $25,000 to the Penningtons in order to preserve its subrogation rights under N.C.G.S. § 20-279.21(b)(4). Instead, Liberty Mutual sought to avoid the Penningtons' UIM claim on the ground that notice thereof was untimely.

Plaintiff Liberty Mutual filed this action on 29 May 1998 requesting a judicial declaration that it was not required to provide UIM coverage to defendants because of their failure to comply with the notice provisions of the policy and to notify plaintiff of the UIM claim prior to the expiration of the three-year statute of limitations period set forth in N.C.G.S. § 1-52. Plaintiff and defendants filed cross-motions for summary judgment, and by order dated 24 August 1999, the trial court entered summary judgment for plaintiff. Specifically, the trial court concluded "that there is no genuine issue as to any material fact, which was specifically stipulated to by the parties during the hearing" and "that plaintiff . . . is entitled to judgment as a matter of law, declaring that its policy affords no underinsured motorist coverage for the [9 December 1993] accident."

Defendants appealed to the Court of Appeals, which unanimously reversed the entry of summary judgment by the trial court. The Court of Appeals held that N.C.G.S. § 20-279.21(b)(4) did not require an insured to notify her carrier of a claim for UIM coverage within the three-year statute of limitations applicable to the tortfeasor. The Court of Appeals further concluded that there remained issues of fact as to whether plaintiff was entitled to deny UIM coverage to defendants based on their failure to adhere to the notification provisions contained in the policy. Plaintiff then petitioned this Court for writ of certiorari to review the decision of the Court of Appeals, which we allowed on 3 May 2001.

I.

[1] Before proceeding to plaintiff's arguments, we think it useful to outline some predominant features of the North Carolina Motor Vehicle Safety and Financial Responsibility Act (commonly referred to as the Financial Responsibility Act), of which N.C.G.S. § 20-279.21(b)(4) is a part. As this Court recognized in *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989), "[t]he avowed purpose of the Financial Responsibility Act . . . is to compensate the innocent victims of financially irresponsible motorists." The Act is remedial in nature and is "to be liberally construed so that the beneficial purpose intended by its enactment may

LIBERTY MUT. INS. CO. v. PENNINGTON

[356 N.C. 571 (2002)]

be accomplished." *Id.* The purpose of the Act, we have said, "is best served when [every provision of the Act] is interpreted to provide the innocent victim with the fullest possible protection." *Proctor v. N.C. Farm Bureau Mut. Ins. Co.*, 324 N.C. 221, 225, 376 S.E.2d 761, 764 (1989).

Plaintiff contends that, pursuant to N.C.G.S. § 20-279.21(b)(4),[1] defendants had an obligation to notify plaintiff of their claim for UIM coverage within the three-year statute of limitations prescribed for personal injury actions, N.C.G.S. § 1-52(16) (1993) (amended 1996). Failure to do so, plaintiff argues, precluded defendants from recovering UIM benefits. The notification provision of N.C.G.S. § 20-279.21(b)(4) reads, in pertinent part, as follows:

> A party injured by the operation of an underinsured highway vehicle who institutes a suit for the recovery of moneys for those injuries and in such an amount that, if recovered, would support a claim under underinsured motorist coverage *shall give notice of the initiation of the suit to the underinsured motorist insurer* as well as to the insurer providing primary liability coverage upon the underinsured highway vehicle. Upon receipt of notice, the underinsured motorist insurer shall have the right to appear in defense of the claim without being named as a party therein, and without being named as a party may participate in the suit as fully as if it were a party.

N.C.G.S. § 20-279.21(b)(4), para. 4 (1993) (amended 1997) (emphasis added). The issue of whether notice of a UIM claim must be given within the statute of limitations governing the underlying tort action is one not previously considered by this Court. Resolution of this issue depends upon our construction of the notice requirement of N.C.G.S. § 20-279.21(b)(4). We set about this task pursuant to well-defined tenets of statutory interpretation.

The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute. *Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991); *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763. "The legislative purpose of a statute is first ascertained by examining the statute's plain language." *Correll v. Division of Soc. Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992).

---

1. N.C.G.S. § 20-279.21 and N.C.G.S. § 1-52 have been amended since the accident giving rise to this action. However, for purposes of this opinion, all references will be to the 1993 versions of the statutes, which were in effect at the time of the 9 December 1993 accident.

" 'Where the language of a statute is clear and unambiguous, there is no room for judicial construction[,] and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.' " *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) (quoting 7 Strong's North Carolina Index 2d *Statutes* § 5 (1968)).

With these principles in mind, we conclude that under N.C.G.S. § 20-279.21(b)(4), there is no requirement that the UIM carrier be notified of a claim within the limitations period applicable to the underlying tort action. The language of the statute is clear, and nothing therein suggests that the notification requirement is subject to a statute of limitations. To the contrary, the statute merely directs the insured to "give *notice of* the initiation of the suit to the underinsured motorist insurer." N.C.G.S. § 20-279.21(b)(4), para. 4 (emphasis added). The statute does not prescribe the type of notice, the content of the notice, or the method by which it is to be executed. The statute is similarly devoid of any particulars as to the time within 'which notice to the insurer must be provided. Given the lack of direction and specificity of N.C.G.S. § 20-279.21(b)(4) regarding the notification requirement, we cannot conclude that the failure to provide such notice within the statute of limitations applicable to the underlying tort action operates to bar recovery of UIM benefits.

Plaintiff notes, nonetheless, that under N.C.G.S. § 20-279.21(b)(4), the UIM carrier shall, upon receiving notice, have "the right to appear in defense of the claim" and to "participate in the suit as fully as if it were a party." *Id.* Plaintiff argues that "full" participation is impossible without prompt notice of the suit; therefore, the legislature must have intended to require that notice be given within the limitations period for the underlying action. Again, we do not believe that such a construction follows from a plain reading of N.C.G.S. § 20-279.21(b)(4). The statute simply affords the insurer the right to choose to fully participate in the underlying action at such time as the insurer receives notice of the suit. Contrary to plaintiff's contention, we find nothing in the aforementioned language to suggest that the insured is obligated to notify the UIM carrier of a claim within the statute of limitations applicable to the underlying action.

A comparison of the language of N.C.G.S. § 20-279.21(b)(4) to that of N.C.G.S. § 20-279.21(b)(3), which applies to uninsured motorist (UM) coverage, lends support to the construction we adopt

here. Under N.C.G.S. § 20-279.21(b)(3), all liability insurance policies are subject to the following:

> A provision that the insurer shall be bound by a final judgment taken by the insured against an uninsured motorist if the insurer has been *served with copy of summons, complaint* or other process in the action against the uninsured motorist by registered or certified mail, return receipt requested, or in any manner provided by law . . . . The insurer, *upon being served as herein provided, shall be a party to the action between the insured and the uninsured motorist* though not named in the caption of the pleadings and may defend the suit in the name of the uninsured motorist or in its own name. *The insurer, upon being served with copy of summons, complaint or other pleading, shall have the time allowed by statute in which to answer, demur or otherwise plead (whether the pleading is verified·or not) to the summons, complaint or other process served upon it.* The consent of the insurer shall not be required for the initiation of suit by the insured against the uninsured motorist: Provided, however, no action shall be initiated by the insured until 60 days following the posting of notice to the insurer at the address shown on the policy or after personal delivery of the notice to the insurer or its agent setting forth the belief of the insured that the prospective defendant or defendants are uninsured motorists.

N.C.G.S. § 20-279.21(b)(3)(a) (emphasis added).

The differences between the two notification provisions is a clear indication that the legislature did not intend them to be given the same construction. N.C.G.S. § 20-279.21(b)(3) unequivocally requires that the UM carrier be served with a copy of the summons and complaint in order to be bound by a judgment against the uninsured motorist. Subsection (b)(3) further directs that upon service of process, the UM carrier shall become a party to the suit and shall have the time allowed by statute to file responsible pleadings. In sharp contrast, N.C.G.S. § 20-279.21(b)(4) does not specify the form, substance, or manner of the notice to be given the UIM carrier. Moreover, subsection (b)(4) does not mandate that the insurer become a party, but merely affords the insurer the option of full participation in the suit upon receipt of the notice. These key distinctions, we believe, illustrate the legislature's intent not to subject the notice provision of N.C.G.S. § 20-279.21(b)(4) to the applicable tort statute of limitations. Thus, we hold that defendants' claim for UIM

benefits was not barred by the three-year statute of limitations set out in N.C.G.S. § 1-52(16).

Furthermore, we believe that our interpretation of N.C.G.S. § 20-279.21(b)(4) is consistent with the remedial purpose of the Financial Responsibility Act and mirrors the characteristic differences between UM and UIM coverage. In the situation where a tortfeasor has no liability insurance coverage, the injured insured's UM carrier generally would be the only insurance provider exposed to liability for the insured's claim for damages. As such, it follows that the UM provider need be made a party to the suit and be served with a copy of the summons and complaint within the statute of limitations governing the underlying tort. The same is not true of the UIM carrier, which would become answerable for the insured's injuries only when the limits of the tortfeasor's liability coverage have been exhausted. *See* N.C.G.S. § 20-279.21(b)(4), para. 1 ("Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted."). In such a situation, the tortfeasor's liability carrier would be the party primarily responsible for defending the action brought by the injured insured. Thus, so long as the action against the tortfeasor is filed within the applicable statute of limitations, the insured's failure to notify her UIM carrier within the limitations period should not, without more, preclude her recovery of UIM benefits. This construction, we conclude, "provide[s] the innocent victim with the fullest possible protection." *Proctor*, 324 N.C. at 225, 376 S.E.2d at 764.

II.

[2] Plaintiff argues, in the alternative, that defendants' claim for UIM benefits is barred for failure to comply with the three-year statute of limitations applicable to liabilities "created by statute," N.C.G.S. § 1-52(2). This Court, however, rejected an analogous argument in *Brown v. Lumbermens Mut. Cas. Co.*, 285 N.C. 313, 204 S.E.2d 829 (1974).

In *Brown*, the plaintiff's intestate died as a result of an accident involving an uninsured motorist. The plaintiff did not file a cause of action against the tortfeasor (the uninsured motorist) within the two-year statute of limitations for wrongful death actions. However, within three years of the accident, the plaintiff instituted an action against his intestate's UM carrier to recover damages for the wrong-

ful death of the intestate. The plaintiff claimed that the action was timely filed because the three-year limitations period for contract actions controlled the UM claim. This Court disagreed, stating that the "[p]laintiff's right to recover against his intestate's insurer under the uninsured motorist endorsement is *derivative and conditional*." *Id.* at 319, 204 S.E.2d at 834 (emphasis added). Further, we explained "that despite the contractual relation between plaintiff insured and defendant insurer, this action is actually one for the tort allegedly committed by the uninsured motorist." *Id.* Therefore, we held that the three-year contract statute of limitations did not apply and that the plaintiff's claim against the UM carrier was barred by the two-year statute of limitations applicable to wrongful-death actions.

The same reasoning applies to the case *sub judice*. This Court has recognized that, like the UM carrier, the UIM carrier's liability derives from that of the tortfeasor. *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 294, 378 S.E.2d 21, 25 (1989); *see also Buchanan v. Buchanan*, 83 N.C. App. 428, 430, 350 S.E.2d 175, 177 (1986) (holding that UIM carrier discharged as a matter of law, given derivative nature of carrier's liability, where plaintiff-insured executed release of claims against tortfeasor), *disc. rev. denied*, 319 N.C. 224, 353 S.E.2d 406 (1987). Thus, although plaintiff's liability to defendants arises, in part, from N.C.G.S. § 20-279.21(b)(4), "this action is actually one for the tort allegedly committed by the [underinsured] motorist." *Brown*, 285 N.C. at 319, 204 S.E.2d at 834. Therefore, the limitations period for actions on statutory liabilities does not apply to defendants' claim for UIM coverage.

## III.

**[3]** Next, we consider plaintiff's claim that defendants forfeited their right to recover UIM benefits based on their failure to adhere to the explicit notice requirements of the policy. In pertinent part, the policy provides that the UIM claimant must "[p]romptly send [plaintiff] copies of the legal papers if a suit is brought." Further, the policy provides that "[a] suit may not be brought by an insured until 60 days after that person notifies [plaintiff] of their [sic] belief that the prospective defendant is an uninsured[/underinsured] motorist." Plaintiff, therefore, contends that the trial court was correct in awarding summary judgment to plaintiff and that the Court of Appeals erred in reversing the ruling of the trial court.

Summary judgment is an appropriate disposition only "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001). The purpose of the rule is to avoid a formal trial where only questions of law remain and where an unmistakable weakness in a party's claim or defense exists. *Dalton v. Camp*, 353 N.C. 647, 650, 548 S.E.2d 704, 707 (2001). This Court has recognized that deciding what constitutes a bona fide issue of material fact is seldom an easy task. *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002); *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999). Nonetheless, we have instructed that "an issue is genuine if it is supported by substantial evidence," *DeWitt*, 355 N.C. at 681, 565 S.E.2d at 146, which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion, *id.* Further, we have said that "[a]n issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *DeWitt*, 355 N.C. at 681, 565 S.E.2d at 146. If the movant successfully makes such a showing, the burden then shifts to the nonmovant to come forward with specific facts establishing the presence of a genuine factual dispute for trial. *Lowe v. Bradford*, 305 N.C. 366, 369-70, 289 S.E.2d 363, 366 (1982). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707. "All inferences of fact must be drawn against the movant and in favor of the nonmovant." *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992). Moreover, the duty of the trial court in considering a motion for summary judgment is strictly confined to determining whether genuine issues of material fact exist and does not extend to resolving such issues. *Alford v. Shaw*, 327 N.C. 526, 539, 398 S.E.2d 445, 452 (1990); *Ward v. Durham Life Ins. Co.*, 325 N.C. 202, 209, 381 S.E.2d 698, 702 (1989). In short, the court's function at this juncture is to find factual issues, not to decide them. *Alford*, 327 N.C. at 539, 398 S.E.2d at 452; *Ward*, 325 N.C. at 209, 381 S.E.2d at 702.

In *Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 303 N.C. 387, 399, 279 S.E.2d 769, 776 (1981), this Court articulated a

three-pronged test for determining whether late notice to an insurer bars recovery:

> When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, *e.g.*, that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay.

In the instant case, defendants concede that they did not notify plaintiff of the claim for UIM coverage as soon as practicable. Therefore, we proceed to the second prong of the *Tate* analysis—whether defendants' failure to timely notify plaintiff was in good faith.

Defendants' evidence tended to show that they did not promptly notify plaintiff of the underlying tort action or their claim for UIM coverage because they simply did not know that the at-fault motorist was underinsured. Defendants presented evidence that they first became aware of their potential UIM claim during the mediation conference on 10 December 1997, when Blackburn Logging's liability insurer informed defendants for the first time that its liability limits were $25,000/$50,000. Realizing that these limits were inadequate to fully compensate them for their damages, defendants immediately notified plaintiff of their intent to seek coverage under the UIM provisions of defendants' liability policy.

Plaintiff, on the other hand, contends that defendants can have no "good faith" excuse for failing to ascertain the logging company's liability limits at the outset of the underlying tort litigation. Plaintiff notes that under N.C.G.S. § 1A-1, Rule 26(b)(2), defendants were entitled to discover, and should have discovered, the logging company's liability insurance policy. In view of this conflicting evidence, we find there to be a genuine issue of fact as to whether defendants acted in good faith in failing to promptly notify plaintiff of the UIM claim. Moreover, we note that "summary judgment is rarely appropriate in actions . . . in which the litigant's state of mind, motive, or subjective intent is an element of plaintiff's claim." *Dobson v. Harris*, 352 N.C. 77, 87, 530 S.E.2d 829, 837 (2000).

We turn next to the third prong of the *Tate* test—whether the delay materially prejudiced plaintiff's ability to investigate and

defend the UIM claim. In determining whether the insurer has suffered material prejudice as a result of the delay, the following are among the relevant factors to be considered by the fact-finder:

"the availability of witnesses to the accident; the ability to discover other information regarding the conditions of the locale where the accident occurred; any physical changes in the location of the accident during the period of delay; the existence of official reports concerning the occurrence; the preparation and preservation of demonstrative and illustrative evidence, such as the vehicles involved in the occurrence, or photographs and diagrams of the scene; the ability of experts to reconstruct the scene and the occurrence; and so on."

*Great Am.*, 303 N.C. at 398, 279 S.E.2d at 776 (quoting *Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 46 N.C. App. 427, 437, 265 S.E.2d 467, 473 (1980)).

Plaintiff claims material prejudice to its ability to investigate and defend the UIM claim, in that it was precluded from participating in the extensive discovery conducted by the parties to the underlying tort action. Plaintiff asserts that the parties have already deposed all of the material witnesses, and if required to defend the suit, plaintiff will have to reconvene several of the witnesses' depositions at considerable expense. In addition, plaintiff argues that the untimely notice resulted in the insurer forfeiting its subrogation rights against the tortfeasors. Plaintiff contends that it was forced to relinquish such rights "in order to preserve the coverage denial at issue here." We note, however, that the third prong of the *Tate* test is not designed to determine whether the insurer has suffered material prejudice in any and all respects. Rather, the prejudice with which *Tate* is concerned is that relative to the ability of the insurer to investigate and defend the claim in question. *Id.* at 397-400, 279 S.E.2d at 775-77. Therefore, the loss of plaintiff's subrogation rights is not relevant to this issue and is not properly a consideration in determining whether plaintiff may avoid liability based on the untimely notice.

In opposition to plaintiff's showing, defendants show that the underlying tort action has yet to go to trial and that plaintiff still has time to conduct additional discovery, to take additional depositions, or to redepose those witnesses who have already been deposed. Furthermore, there is nothing in the record to show that the tortfeasors had received inadequate legal representation prior to plaintiff's receiving notice of the suit. Likewise, nothing in the record suggests

that witnesses have become unavailable or that material evidence has been made unattainable. Therefore, the record demonstrates neither the presence nor the absence of material prejudice as a matter of law. Accordingly, we hold that the issue of whether defendants are barred from recovering UIM benefits for failure to comply with the notice provisions of the policy is not yet ripe for summary judgment and that the trial court erroneously entered judgment in favor of plaintiff.

For the foregoing reasons, we hereby affirm the Court of Appeals' decision reversing the trial court's grant of summary judgment to plaintiff.

AFFIRMED.