**LUNSFORD v. MILLS**

[229 N.C. App. 24 (2013)]

_____

DOUGLAS KIRK LUNSFORD, Plaintiff
v.
THOMAS E. MILLS., JAMES W. CROWDER, III, and SHAWN T. BUCHANAN, Defendants

No. COA13-167

Filed 20 August 2013

1. **Insurance—underinsured motorist coverage—multiple tortfeasors—all policies applicable to one underinsured highway vehicle**

    The trial court did not err by granting summary judgment in favor of plaintiff in a declaratory judgment action concerning underinsured motorist (UIM) coverage in connection with two motor vehicle accidents. In a motor vehicle accident resulting in injury to the insured caused by multiple tortfeasors, UIM coverage is triggered the moment that the insured has recovered under all policies applicable to one underinsured highway vehicle involved in the accident. Thus, plaintiff's UIM coverage was triggered the moment that all policies applicable to defendant Buchanan's vehicle had been exhausted.

2. **Insurance—underinsured motorist coverage—pre- and post-judgment interest**

    The trial court did not err in a case involving underinsured motorists (UIM) coverage by awarding plaintiff costs and pre- and

post-judgment interest where the judgment was entered against the insurance company itself, not against its insured (plaintiff).

Appeal by Unnamed Defendant North Carolina Farm Bureau Mutual Insurance Company from order entered 13 November 2012 by Judge James U. Downs in McDowell County Superior Court. Heard in the Court of Appeals 5 June 2013.

*Abrams & Abrams, P.A., by Noah B. Abrams, Douglas B. Abrams, and Melissa N. Abrams, for Plaintiff.*

*Nelson Levine de Luca & Hamilton, by David L. Brown and Brady A. Yntema, for Unnamed Defendant North Carolina Farm Bureau Mutual Insurance Company.*

DILLON, Judge.

Unnamed Defendant North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) appeals from the trial court's order granting summary judgment in favor of Douglas Kirk Lunsford (Plaintiff). We affirm.

## I. Factual & Procedural Background

This appeal arises from a dispute between Farm Bureau and its insured, Plaintiff, concerning underinsured motorist (UIM) coverage in connection with two motor vehicle accidents that occurred on Interstate 40 in McDowell County on 18 September 2009. The first accident occurred when Defendant Thomas E. Mills lost control of his tractor trailer while traveling in the eastbound lane of Interstate 40, causing the vehicle to flip. At the time of this accident, Mr. Mills was acting within the scope of his employment with Defendant James Crowder.

Plaintiff, a volunteer firefighter with the Crooked Creek Fire Department, was the first to respond to the scene and parked his vehicle on the right shoulder of the westbound travel lane. Plaintiff crossed the freeway on foot to assist Mr. Mills and determined that "[Mr.] Mills was injured and that diesel fuel was leaking from" the tractor trailer. As Plaintiff attempted to carry Mr. Mills "over the concrete median [and] . . . across the westbound lanes of I-40 to safety, to perform an assessment of [Mr. Mills'] injuries," the second accident occurred when another motorist, Defendant Shawn T. Buchanan, who was traveling in the westbound lane, "was not paying attention to traffic in front of him which had slowed due to the wrecked tractor-trailer, nearly rear-ended a vehicle

in front of him and swerved suddenly to his left and struck Plaintiff." As a result of this collision, Plaintiff "suffered severe, permanent, and catastrophic injury."

At the time of these accidents, Mr. Mills and his employer, Mr. Crowder, were insured under a policy written by United States Fire Insurance Company (US Fire) providing liability coverage limits of $1 million. Mr. Buchanan was insured under a policy written by Allstate Insurance Company (Allstate) providing liability coverage limits of $50,000.00. Plaintiff held two insurance policies with Farm Bureau: (1) a business automobile policy with UIM coverage limits of $300,000.00; and (2) a personal automobile policy with UIM coverage limits of $100,000.00.

On 14 February 2011, Plaintiff filed a complaint in McDowell County Superior Court asserting negligence claims against the named Defendants and alleging that Defendants were jointly and severally liable for his injuries. All Defendants filed answers, and Defendants Buchanan and Crowder asserted crossclaims against one another seeking indemnification and contribution. In addition, Farm Bureau, which had not been named as a party in the action, filed an answer asserting that it was entitled to an offset with respect to Plaintiff's UIM policies for any damages recovered by Plaintiff through insurance policies held by the named Defendants.

On 24 May 2011, Allstate tendered to Plaintiff the $50,000.00 coverage limit for Buchanan's policy. The following day, counsel for Plaintiff notified Farm Bureau of Allstate's tender and demanded that Farm Bureau tender payment for Plaintiff's UIM claim. By letter dated 7 June 2011, Farm Bureau responded that it would "not advance the liability policy limits tendered to [Plaintiff] by Allstate" and that "[a]s for the demand for our [UIM] policy limits, we are currently reviewing the situation with counsel based on the apparent existence of other potential recoverable liability insurance policies and will respond to your demand at a later date." More than six months later, Farm Bureau still had not provided UIM coverage to Plaintiff when Plaintiff settled his claims against Mr. Mills and Mr. Crowder for $850,000.00, which was paid under their policy with US Fire. On 12 January 2012, an order was entered in McDowell County Superior Court approving the settlement of Plaintiff's claims against Defendants Buchanan, Mills, and Crowder; and, accordingly, all claims and crossclaims filed in Plaintiff's original action were dismissed with prejudice.

Farm Bureau, however, never tendered any monies to Plaintiff under Plaintiff's UIM policies. Instead, on 19 July 2012, Farm Bureau

moved for summary judgment, seeking a declaration that Plaintiff was not entitled to UIM coverage because the aggregate amount of Plaintiff's settlements - $900,000.00 - exceeded the aggregate amount of the UIM coverage - $400,000.00 – provided under Plaintiff's Farm Bureau policies. In response, Plaintiff filed a cross motion for summary judgment, contending that the policy limits under his Farm Bureau policies stack and that he was entitled to judgment against Farm Bureau in the amount of $350,000.00, which represented his aggregate UIM coverage *minus* the $50,000.00 that he had received pursuant to his settlement with Mr. Buchanan.

The matter of Farm Bureau's motion for summary judgment and Plaintiff's cross motion for summary judgment came on for hearing in McDowell County Superior Court on 15 October 2012. By order filed 13 November 2012, the trial court granted Plaintiff's motion for summary judgment, denied Farm Bureau's motion for summary judgment, and entered judgment in Plaintiff's favor and against Farm Bureau in the amount of $350,000.00, plus costs and pre and post-judgment interest. Farm Bureau appeals.

## II. Analysis

[1] This appeal raises the question of *when* UIM coverage is triggered in instances in which the insured is injured in a motor vehicle accident caused by multiple tortfeasors. More specifically, we must determine whether Farm Bureau was obligated to provide UIM coverage to Plaintiff once Allstate had tendered its policy limits to Plaintiff on behalf of Mr. Buchanan, or, whether Farm Bureau was entitled to withhold coverage until Plaintiff had recovered (or attempted to recover) under the liability policies insuring the tractor trailer driven by Mr. Mills.

Farm Bureau argues that it was not required to provide coverage until all applicable policies – meaning all policies held by all the named Defendants – had been exhausted; that Plaintiff settled his claims against the named Defendants for a total of $900,000.00, an amount that far exceeded Plaintiff's total UIM coverage limits of $400,000.00; and that permitting Plaintiff to recover UIM coverage of $350,000.00 *in addition to* the $900,000.00 he had already received from the tortfeasors provided Plaintiff with a windfall.

Plaintiff counters that his $50,000.00 settlement with Allstate on behalf of Mr. Buchanan triggered Farm Bureau's obligation to provide UIM coverage in the amount of $350,000.00, the amount by which Plaintiff's $400,000.00 UIM coverage with Farm Bureau exceeded the settlement. Plaintiff argues that Farm Bureau could have recouped

its payment through a subrogation claim when Plaintiff subsequently received the proceeds of his $850,000.00 settlement with Mr. Mills and Mr. Crowder, but that Farm Bureau forfeited its subrogation rights by refusing to tender coverage at the time of Plaintiff's settlement with Mr. Buchanan.

"[T]he governing statute [concerning UIM coverage] is the version of N.C. Gen. Stat. § 20-279.21(b)(4) in effect at the time the policy was issued." *Vasseur v. St. Paul Mut. Ins. Co.*, 123 N.C. App. 418, 420, 473 S.E.2d 15, 16 (1996). N.C. Gen. Stat. § 20-279.21(b)(4) is a provision of the Financial Responsibility Act (the Act), which "is remedial in nature and must be liberally construed . . . in order to protect 'innocent victims who may be injured by financially irresponsible motorists.' " *Sanders v. Am. Spirit Ins. Co.*, 135 N.C. App. 178, 181, 519 S.E.2d 323, 325 (1999) (citation omitted). The applicable version of N.C. Gen. Stat. § 20-279.21(b)(4) provides, in pertinent part, as follows:

> Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of *the underinsured highway vehicle* have been exhausted.

N.C. Gen. Stat. § 20-279.21(b)(4) (2011) (emphasis added). This provision also defines an "underinsured highway vehicle" as follows:

> [A]n "underinsured highway vehicle["] means a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

*Id.* As discussed below, we interpret the plain language of this provision to mean that UIM coverage is triggered the moment that an insured has recovered under all policies applicable to "a" – meaning one – "underinsured highway vehicle" involved in a motor vehicle accident resulting in injury to the insured.

We note that neither Plaintiff nor Farm Bureau offers any North Carolina case law addressing the rights and obligations of a UIM insurer in a situation involving liability policies covering multiple vehicles that

are potentially liable to the injured insured. This Court has, however, ruled on a UIM coverage issue involving multiple tortfeasors where the liability of one of the tortfeasors arose from the operation of a motor vehicle. *Farm Bureau Ins. Co. of N.C., Inc. v. Blong*, 159 N.C. App. 365, 583 S.E.2d 307 (2003). In *Blong*, the victim (Lawler) was killed by a drunk driver (Marvin) in an automobile accident. *Id.* at 366, 583 S.E.2d at 308. At the time of her death, Lawler was insured under a Farm Bureau policy which provided UIM coverage with limits of $100,000.00 per person, $300,000.00 per accident. *Id.* at 367, 583 S.E.2d at 308. Marvin's automobile insurance carrier tendered its policy limits of $50,000.00 "almost immediately after the accident"; however, that amount was insufficient to compensate Lawler (and the families of the other victims who had been killed in the accident) and thus "dram shop" lawsuits were filed against two local bars which had served alcohol to Marvin. *Id.* at 366-67, 583 S.E.2d at 308. The victims subsequently reached settlement agreements with both Marvin and the bars, and Farm Bureau, which had previously tendered its UIM limits under Lawler's policy, sought a declaratory judgment that it was entitled to an offset to the extent of the UIM coverage it had provided. *Id.* at 367-68, 583 S.E.2d at 309. On appeal, we affirmed the trial court's ruling that Farm Bureau was entitled to an offset and stated the following concerning the rights and obligations of a UIM insurer where multiple tortfeasors are involved:

> The UIM carrier pays out what it owes its insured after judgment or settlement has been reached with the under-insured driver. If there are parties that exist that may be made "legally responsible" through proper court channels, the UIM insurer may pursue them via their subrogation rights. As it happened here, such an offer was made, but refused by the insured. As the structure of the Act and definition of exhaustion provide, a UIM carrier cannot require an insured to pursue these parties before exhaustion can occur. Recovered proceeds from legally responsible parties can only flow back to the UIM carrier after the fact. There is no entitlement or subrogation by the UIM carrier to those proceeds unless payment to the insured was made when the underinsured vehicle's limits were exhausted, or otherwise in accordance with the Act. Money paid out by UIM insurer is to be recouped, not reduced then paid out. The fear . . . that insureds will be kept hanging in limbo as they are forced to sue any and all possible persons or organizations for years before they could recover their UIM

> benefits are [sic] unfounded. Such actions on the part of
> UIM carriers would be in the realm of bad faith.

*Id.* at 373, 583 S.E.2d at 312.

We see no reason why the rights and obligations of a UIM insurer should differ in the present case simply because the additional tortfeasor was a motorist covered under an automobile liability policy. In other words, we see no reason why insureds should "be kept hanging in limbo as they are forced to sue any and all possible persons . . . before they could recover UIM benefits" just because other potential tortfeasors also happen to be covered under automobile policies.[1] Here, Plaintiff's UIM coverage was triggered the moment that all policies applicable to Mr. Buchanan's vehicle had been exhausted; Farm Bureau was not at liberty to withhold coverage until Plaintiff reached settlement agreements with Mr. Mills and Mr. Crowder, as *Blong* clearly obligates the UIM carrier to first provide coverage, and later seek an offset through reimbursement or exercise of subrogation rights. We believe that this result comports with the Act's purpose which is "best served when the statute is interpreted to provide the innocent victim with the *fullest possible protection* . . . from the negligent acts of an underinsured motorist." *Sanders*, 135 N.C. App. at 181-82, 519 S.E.2d at 325 (quoting *Proctor v. N.C. Farm Bureau Mut. Ins. Co.*, 324 N.C. 221, 224, 376 S.E.2d 761, 763 (1989)) (emphasis in original). Moreover, Farm Bureau's contention that the trial court's order resulted in a windfall to Plaintiff is unavailing. Had Farm Bureau tendered its policy limits in accordance with this Court's mandate in *Blong*, it would have had the opportunity for reimbursement and there would have been no windfall. To hold otherwise would not only punish the insured, but also reward UIM insurers for withholding coverage when due.

[2] Finally, Farm Bureau contends that the trial court erred in awarding Plaintiff costs and pre and post-judgment interest "as provided by law." Farm Bureau cites *Sproles v. Greene*, 329 N.C. 603, 407 S.E.2d 497 (1991), in support of its contention that "[a]n insurer has no statutory duty . . . to pay interest or costs in excess of its policy limits" and that "any obligation on the part of an insurer to pay such interest or costs is

---

1. We note that decisions of courts in other jurisdictions are in accord with our holding. *See, e.g., Gen. Acc. Ins. Co. v. Wheeler*, 221 Conn. 206, 214, 603 A.2d 385, 388-89 (1992) (holding that "the insured need only exhaust the 'liability bond or insurance policies' of one tortfeasor in order for the insured to be eligible to pursue underinsured benefits") (citing *Mulholland v. State Farm Mutual Automobile Ins. Co.*, 171 Ill. App.3d 600, 617, 122 Ill. Dec. 657, 527 N.E.2d 29 (1988), and *Motorist Mutual Ins. Co. v. Tomanski*, 27 Ohio St.2d 222, 223, 271 N.E.2d 924 (1971)).

governed by the terms and conditions of its policy." *Greene,* however, holds that the UIM carrier is not required to pay pre and post-judgment interest *on behalf of the insured* where the judgment has been entered *against the insured, id.* at 605, 407 S.E.2d at 498, and thus has no bearing on the case at hand, in which the judgment was entered against Farm Bureau itself, not against its insured (Plaintiff). This contention is without merit and is accordingly overruled.

III.  Conclusion

For the foregoing reasons, the trial court's 13 November 2012 order is hereby

AFFIRMED.

Judges BRYANT and STEPHENS concur.