Justice NEWBY
dissenting in part and concurring in part.
The purpose of underinsured motorist (UIM) coverage in our state is to serve as a safeguard when tortfeasors’ liability policies do not provide sufficient recovery — that is, when the tortfeasors are “under insured.” This is simply not the case here. Plaintiff incurred damages amounting to $900,000. He brought suit jointly and severally against responsible tortfeasors whose total liability limits were $1,050,000. Those combined liability limits were more than sufficient to satisfy plaintiff’s damages and were more than twice as high as plaintiff’s $400,000 UIM limits. Not only does the majority incorrectly hold that UIM coverage was necessary in this instance, but the majority’s outcome also leaves plaintiff with $350,000 in excess of his agreed-to damages. By contrast, I would hold that UIM coverage was not activated in this case. Rather, under the UIM statute, coverage only applies when the policyholder’s UIM limits are more than the combined limits of the insurance coverage of all jointly and severally liable tortfeasors against whom the plaintiff files suit. Consequently, I respectfully dissent.
At the time of the accident, the jointly and severally liable tortfeasors, Mills, his employer Crowder, and Buchanan, carried liability policies totaling $1,050,000 while plaintiff was covered by two UIM policies with North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) with combined limits of $400,000. After plaintiff filed suit against Mills, Crowder, and Buchanan, Buchanan’s provider, Allstate, tendered to plaintiff the $50,000 limits of Buchanan’s policy. Six months later, plaintiff settled his claim with defendants Mills’ and Crowder’s coverage provider for $850,000. After the trial court approved plaintiff’s settlement with the named defendants, Farm Bureau, as an unnamed defendant, moved for summary judgment, contending that plaintiff was not entitled to UIM coverage because the combined policy limits of the defendants exceeded plaintiff’s UIM limits. Plaintiff also moved for summary judgment, insisting that Buchanan was an underinsured driver and that plaintiff was thus entitled to Farm Bureau’s UIM policy limits of $400,000 less an offset of $50,000 for Buchanan’s Allstate insurance payment. The trial court entered judgment in plaintiff’s favor for $350,000, plus costs and pre- *633 and post-judgment interest. As a result, plaintiff received $50,000 from Buchanan’s insurer, $850,000 from the settlement with Mills and Crowder, and $350,000 from his own UIM policy with Farm Bureau for a total of $1,250,000 while settling his damages claims with the actual tortfeasors for only $900,000, which left untapped $150,000 of tortfeasor insurance.
The majority’s holding is based on a fundamental misunderstanding of UIM coverage and the implementing statute, as well as a misunderstanding of Farm Bureau’s argument. UIM insurance in North Carolina developed out of uninsured motorist (UM) insurance. James E. Snyder, Jr., North Carolina Automobile Insurance Law § 30-1 (3d ed. 1999). UM insurance provides recovery for a policyholder injured in an auto accident by the motor vehicle of a tortfeasor who has no liability insurance. Id. By comparison, UIM coverage provides a secondary source of recovery for an insured when the tortfeasor has insurance, but the tortfeasor’s liability limits are insufficient to compensate the injured party. Sutton v. Aetna Cas. & Sur. Co., 325 N.C. 259, 263, 382 S.E.2d 759, 762 (1989), superseded on other grounds by statute, Act of July 12, 1991, ch. 646, 1991 N.C. Sess. Laws 1550 (captioned “An Act to Prohibit the Stacking of Uninsured and Underinsured Motorist Coverage”). The UM and UIM statute is part of North Carolina’s Motor Vehicle Safety and Financial Responsibility Act of 1953 (Act). N.C.G.S. §§ 20-279.1 to 279.39 (2013). The Act’s purpose is
to compensate the innocent victims of financially irresponsible motorists. The Act is remedial in nature and is to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished. The purpose of the Act, we have said, is best served when [every provision of the Act] is interpreted to provide the innocent victim with the fullest possible protection.
Liberty Mut. Ins. Co. v. Pennington, 356 N.C. 571, 573-74, 573 S.E.2d 118, 120 (2002) (alteration in original) (citations and internal quotation marks omitted). Even though the Act is intended to provide “the fullest possible protection,” id. at 574, 573 S.E.2d at 120, it is only activated when a plaintiff is “under insured.” A plaintiff cannot, under the statute, obtain UIM proceeds if the tortfeasors’ insurance is greater than the UIM coverage or is sufficient to compensate his damages. N.C.G.S. § 20-279.21(b)(4). The recovery provided by UIM coverage is only meant to augment inadequate recoveries obtained from underinsured tortfeasors. Id. (reducing UIM amounts by amounts *634 received by the plaintiff from a tortfeasor’s exhausted policy or policies). In other words, UIM coverage puts the insured claimant back in the position he would have occupied had the tortfeasor been insured at limits equal to the claimant’s UIM limits. See Nationwide Mut. Ins. Co. v. Haight, 152 N.C. App. 137, 142, 566 S.E.2d 835, 838 (2002) (noting the statute’s goal of putting a policy holder “in the same position that the policy holder would have been in if the tortfeasor had had liability coverage equal to the amount of the UM/UIM coverage” (citations and emphasis omitted)), disc. rev. denied, 356 N.C. 675, 577 S.E.2d 627 (2003).
Two provisions in the UIM statute in particular demonstrate this intent by the legislature to make UIM coverage a source of compensation secondary to 'tortfeasors’ liability policies. Elec. Supply Co. of Durham v. Swain Elec. Co., 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (observing that, inter alia, “we are guided by the structure of the statute” in determining legislative intent (citations omitted)). The first is the reduction provision, which states:
In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident.
N.C.G.S. § 20-279.21(b)(4) (“reduction provision”). Under the reduction provision, a UIM carrier reduces its applicable policy limits by amounts paid to the claimant from tortfeasors’ exhausted policies.
The second supporting provision is the offset or recovery provision found in N.C.G.S. § 20-279.21(b)(3), which is incorporated by reference into subdivision 20-279.21(b)(4): *635 Id. at § 20-279.21(b)(3). This provision entitles a UIM carrier to use a claimant’s judgment proceeds to recoup the UIM carrier’s payments to the claimant. The presence of the reduction and offset provisions in the statute evinces a legislative intent for UIM coverage to be applicable only to the extent that other sources of recovery fail to compensate for the injury up to the UIM limits.[1] Nice. Supply Co., 328 N.C. at 656, 403 S.E.2d at 294 (“An analysis utilizing the plain language of the statute and the canons of construction must be done in a manner which harmonizes with the underlying reason and purpose of the statute.” (citation omitted)); State v. Hart, 287 N.C. 76, 80, 213 S.E.2d 291, 295 (1975) (“A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language.” (citation omitted)). The insured’s UIM limits, not the insured’s total damages, provide the ceiling for recovery. See Fasulo v. State Farm Mut. Auto. Ins. Co., 108 N.M. 807, 810-11, 780 P.2d 633, 636-37 (1989) (discussing a UIM statute similar to subsection 20-279.21(b)(4)). Thus, an insured plaintiff’s UIM recovery “is controlled contractually by the amount of the UIM policy limits purchased and available to her, not fortuitously by the number of tortfeasors involved in the accident.” Nikiper v. Motor Club of Am. Cos., 232 N.J. Super. 393, 398-99, 557 A.2d 332, 335, certification denied, 117 N.J. 139, 564 A.2d 863 (1989). The majority’s holding runs contrary to the nature and purpose of UIM coverage.
*634 In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of coverage, the insurer making payment shall, to the extent thereof, be entitled to the proceeds of any settlement for judgment resulting from the exercise of any limits of recovery of that person against any person or organization legally responsible for the bodily injury for which the payment is made, including the proceeds recoverable from the assets of the insolvent insurer.
*635 With this understanding of the UIM statute’s purpose in mind, it is necessary to consider closely the statute’s controlling provision in this case — the activation provision. As an initial matter, the majority misreads Farm Bureau’s argument. Farm Bureau is not insisting that the statute requires plaintiff “to exhaust not only Buchanan’s liability limits, but also the policy limits of Mills and Crowder to the extent that they are liable as joint tortfeasors” in order for plaintiff to receive UIM benefits. Rather, Farm Bureau is asserting that UIM coverage is not applicable at all because plaintiff implicated $1,050,000 in liability coverage when he sued the three tortfeasors. As a result of this mischaracterization, the majority errs in its approach to the statute by focusing on the UIM’s triggering (exhaustion) provision without first fully considering subdivision (b)(4)’s activation provi *636 sion.[2] The distinction between the activation and triggering provisions is critical because if no vehicle meets the definition of an under-insured vehicle under the activation provision, then consideration of the subsequent triggering provision is unnecessary.
The activation provision is found in subdivision (b)(4), which is the portion of the statute governing UIM coverage. N.C.G.S. § 20-279.21(b)(4). A UIM carrier pays on its policy to an injured claimant when (1) the auto accident involves a tortfeasor who meets the statute’s definition of an underinsured highway vehicle (the activation provision); and (2) the underinsured highway vehicle’s liability coverage has been exhausted (triggering provision). Id.[3] The UIM statute’s activation provision defines an underinsured highway vehicle as:
[A] highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner’s policy.
Id. The activation provision applies a comparison of limits approach — UIM coverage is activated when the insured’s UIM policy limits 'are greater than the liability limits of policies connected with the tortfeasor’s ownership, maintenance, or use of a highway vehicle. 3 Irvin E. Schermer & William J. Schermer, Automobile Liability Insurance § 38:7 (4th ed. Dec. 2004) [hereinafter Automobile Liability Insurance\. In a scenario involving a single insured claimant and a single tortfeasor, application of the statute’s activation provision is straightforward. If the insured’s UIM limits are greater than the tortfeasor’s liability limits, the insured’s UIM coverage is activated. N.C.G.S. § 20-279.21(b)(4). Only then does subdivision (b)(4)’s triggering provision become relevant.
Under the triggering provision, once the tortfeasor’s liability limits have been paid out to the insured, if the injuries have not been *637 adequately compensated, the insured can collect from the UIM carrier up to the maximum amount of the UIM coverage limits minus the amount paid to the claimant under the tortfeasor’s exhausted policy. Id. The net effect is that UIM coverage puts the insured claimant back in the position he would have occupied had the tortfeasor been insured at limits equal to the claimant’s UIM limits. See Haight, 152 N.C. App. at 142, 566 S.E.2d at 838.
Though the activation provision’s application is clear when only one tortfeasor is involved, we have not previously addressed whether, in a multiple tortfeasor scenario, the insured’s UIM policy limits should be compared individually to each tortfeasor’s liability limits or compared to the sum of the liability limits of all tortfeasors. When read in the broader context of the statute, the UIM’s activation provision instructs comparing the insured’s policy limits to the sum of the liability of all jointly and severally liable tortfeasors. More specifically, a vehicle is underinsured when “the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident” with respect to the use of the vehicle is less than an insured’s UIM limits. N.C.G.S. § 20-279.21(b)(4).
This interpretation of the activation provision is in consonance with the surrounding provisions of the statute and in keeping with the overall legislative intent of requiring UIM coverage to provide a limited source of compensation when a claimant is injured by tortfeasors who are collectively underinsured.[4] Automobile Liability Insurance § 41.3 at 41-42 (noting that under “comparison of limits” statutes like North Carolina’s, “an underinsured motorist carrier may defeat underinsured motorist coverage by pointing to other liability coverages available to the tortfeasor which, when aggregated, produce a totality of limits in excess of the underinsured motorist insured’s limits, or by aggregating the liability coverages of joint tortfeasors.” (emphasis added) (footnote call number omitted)); see Nikiper, 232 N.J. Super, at 397, 557 A.2d at 334 (“We conclude that where the amount paid by the insurors for the multiple tortfeasors equals or exceeds the amount of the UIM coverage, plaintiff has no UIM claim.”); see also Sutton, 325 N.C. at 265, 382 S.E.2d at 763 (observing that “[(legislative intent can be ascertained not only from the phraseology of the statute but also from the nature and purpose of the act *638 and the consequences which would follow its construction one way or the other”). In the case at hand it is contrary to the purpose of the statute to conclude that Buchanan’s vehicle alone activates UIM coverage when the combined liability limits of the jointly and severally liable tortfeasors is $1,050,000 and plaintiff’s UIM coverage is $400,000. Likewise, it is nonsensical to say a party is “underinsured” when the injured party settles with the tortfeasors for $150,000 less than their policies’ coverage. State v. Beck, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (“[Wjhere a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.” (citations and internal quotation marks omitted)).
Interpreting the first portion of the activation provision to require comparing UIM limits to the combined limits of jointly and severally liable tortfeasors is in harmony with the immediately succeeding portion of the activation provision, which addresses UIM coverage in the context of multiple victims. State ex rel. Comm’r of Ins. v. N. C. Auto. Rate Admin. Office, 287 N.C. 192, 202, 214 S.E.2d 98, 104 (1975) (“We are further guided by rules of construction that statutes in pari materia, and all parts thereof, should be construed together and compared with each other.” (citation omitted)). The succeeding portion of the provision states:
For purposes of an underinsured motorist claim asserted by a person injured in an accident where more than one person is injured, a highway vehicle will also be an “underinsured highway vehicle” if the total amount actually paid to that person under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner’s policy.
N.C.G.S. § 20-279.21(b)(4) (emphasis added). This provision unambiguously contemplates comparing an insured plaintiff’s UIM limits broadly to payments the plaintiff has received under all liability policies applicable at the time of the accident. It does not restrict the comparison of limits test to a single tortfeasor. Because this second portion of the activation provision requires aggregation of liability limits for the purposes of comparison in a multiple victim scenario, under the first portion of the activation provision, in a multiple tortfeasor scenario, the same aggregation of liability limits must apply. Otherwise, in a multiple victim, multiple tortfeasor scenario, the acti *639 vation provision would produce conflicting determinations as to the existence of an underinsured highway vehicle, with the first portion requiring a one-to-one comparison and the second portion requiring a one-to-all comparison. An interpretation of the activation provision that limits policy comparisons to a single tortfeasor violates a basic rule of statutory interpretation by creating this conflict. Nationwide Mut. Ins. Co. v. Chantos, 293 N.C. 431, 440, 238 S.E.2d 597, 603 (1977) (“Obviously, the Court will, whenever possible, interpret a statute so as to avoid absurd consequences.” (citations omitted)).
The majority contends that under Farm Bureau’s approach, “insureds would be required to pursue all claims, including weak, tenuous ones, against all potentially liable parties, no matter how impractical, before being eligible to collect their contracted-for UIM benefits.” As noted above, this conclusion arises from mischaracterizing Farm Bureau’s argument as stating that UIM benefits should only be paid after plaintiff exhausts all applicable policies. The majority’s policy concern disappears, however, when Farm Bureau’s position is correctly understood to be that UIM coverage is not activated when the sum of the jointly and severally liable tortfeasors’ policy limits is higher than plaintiff’s UIM limits. In the instant case plaintiff chose to bring suit against the three defendants jointly and severally; no one was being “forced to sue any and all possible persons,” Lunsford v. Mills, _N.C. App. _, _, 747 S.E.2d 390, 394 (2013), or “required to pursue all claims,” as the majority insists. An attempt by a UIM carrier to demand that plaintiff pursue the other tortfeasors before being eligible for UIM benefits “would be in the realm of bad faith.” Farm Bureau Ins. Co. of N. C. v. Blong, 159 N.C. App. 365, 373, 583 S.E.2d 307, 312, disc. rev. denied, 357 N.C. 578, 589 S.E.2d 125 (2003). Our General Statutes already prohibit such actions. N.C.G.S. § 58-63-15(ll)(f) (2013) (“Unfair Claim Settlement Practices”); see also Gray v. N.C. Ins. Underwriting Ass’n, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000) (concluding that “the act or practice of ‘[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,’ also engages in conduct that embodies the broader standards of N.C.G.S. § 75-1.1” (alteration in original) (quoting N.C.G.S. § 58-63-15(ll)(f))). The decision whether to pursue further litigation is within the control of the plaintiff unless he subrogates his claims to the insurer; a UIM carrier “cannot require an insured to pursue [other alleged tortfeasors] before exhaustion can occur.” Blong, 159 N.C. App. at 373, 583 S.E.2d at 312. If plaintiff in this case had preferred to *640 sue Buchanan alone and collect on his $50,000 policy limits, plaintiffs UIM coverage would have been activated and triggered. Having chosen, however, to pursue simultaneously claims against multiple tortfeasors whose combined liability limits far exceeded plaintiffs own UIM coverage, plaintiff was no longer able to access his UIM policy limits.
The majority further asserts, again under a misunderstanding of Farm Bureau’s position, that requiring exhaustion before the receipt of UIM benefits would render “meaningless” the provisions granting UIM carriers subrogation and reimbursement rights. Under a proper consideration of Farm Bureau’s position and based on a proper reading of the activation provision, the provisions in question would not be surplusage. The subrogation provision noted by the majority is applicable when (a) underinsured motorist coverage is activated, and (b) a UIM carrier voluntarily pays out to the insured before the triggering provision has been satisfied. N.C.G.S. § 20-279.21(b)(4). This subrogation right is a necessary assurance to a UIM carrier who voluntarily, id. (“at its option”), chooses to pay its insured before exhaustion of a tortfeasor’s policy limits. Granted, this scenario is not likely to occur. George L. Simpson, III, North Carolina Uninsured and Underinsured Motorist Insurance § 4:2, at 351 (2013-2014 ed.) (noting that these occasions are likely to be few). Nevertheless, this does not make the provision superfluous.
Lastly, the majority misapprehends subdivision (b)(4)’s thirty-day advancement-of-payment provision. The majority is incorrect in concluding that Farm Bureau has forfeited its rights to recovery from the proceeds of the Mills and Crowder settlement, N.C.G.S. § 20-279.21(b)(3) (incorporated into subdivision (b)(4) and entitling the UIM carrier to “the proceeds of any settlement for judgment” related to the plaintiff’s injuries), because it failed to “preserve its subrogation rights” by not advancing its policy limits to plaintiff in a timely manner. When a UIM carrier fails to advance payment within thirty days of notice of a settlement with an underinsured motorist, it only forfeits its subrogation rights as to the underinsured motorist under N.C.G.S. § 20-279.21(b)(4) (“No insurer shall exercise any right of subrogation or any right to approve settlement with the original owner, operator, or maintainer of the underinsured highway vehicle under a policy providing coverage against an underinsured motorist where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following *641 receipt of that notice.” (emphasis added)). That thirty-day deadline does not affect the UIM carrier’s recovery rights against remaining tortfeasors. Furthermore, the offset provision in N.C.G.S. § 20-279.21(b)(3) contains no requirement that a UIM carrier first pay out its limits before being entitled to a recovery against the proceeds paid by tortfeasors. Nothing in the statute dictates that a UIM carrier forfeits its rights to offset against judgment recoveries from other parties by not paying out benefits in a timely manner.
The case relied on by the majority in support of its forfeiture conclusion, State Farm Mutual Automobile Insurance Co. v. Blackwelder, determined that the insurer preserved subrogation rights against the underinsured tortfeasor; it does not address a UIM carrier’s right to recover proceeds paid by other tortfeasors. 332 N.C. 135, 418 S.E.2d 229 (1992). In Blong, upon which the Court of Appeals relied in arriving at a conclusion similar to that of the majority, a UIM carrier paid out its policy limits to an insured and then argued it was entitled to an offset against any amounts received by the insured in subsequent actions against additional parties. 159 N.C. App. at 367-68, 583 S.E.2d at 308-09. Noting the UM/UIM statute’s remedial nature, Blong nonetheless concluded that “the Act appears to allow for the type of subrogation that plaintiff claims.” Id. at 373, 583 S.E.2d at 312. Blong answered the question whether the UIM carrier was entitled to an offset after having already paid out its UIM limits and gave a sequence of “how the procedure may play out.” Id. (emphasis added). The holding in Blong does not “clearly obligate] ] the UIM carrier to first provide coverage, and later seek [recovery]”. Lunsford, _N.C. App. at_, 747 S.E.2d at 394. Neither the UIM statute nor case law provides the necessary support for the majority’s timing and forfeiture determination regarding Farm Bureau’s entitlement to recovery. Furthermore, reading the UIM statute as requiring Farm Bureau to pay out its UIM limits promptly in order to protect the UIM policyholder is unnecessary; a UIM claimant is already protected by the Unfair Claim Settlement Practices statute from delayed payment, as noted above. Regardless whether UIM coverage was activated in this case, Farm Bureau should nevertheless be entitled to recovery.
The majority’s insistence on reading the activation provision as limited only to a comparison of the UIM policy limits and an individual tortfeasor’s policy limits in this case allows plaintiff to collect from his $400,000 UIM policy even though he has already settled damr ages claims for $900,000 with the tortfeasors, which is $150,000 less *642 than the maximum primary insurance coverage available. The legislature never intended for UIM coverage to serve this role, providing plaintiff an excess recovery of $350,000. Rather the legislature intended for plaintiffs UIM policy to serve as a safeguard to protect plaintiff in the event the tortfeasors’ liability policies failed to compensate plaintiff for injuries up to $400,000. This legislative intent is best carried out by first comparing plaintiff’s UIM limits to the combined limits of all the auto policies implicated in the lawsuit. Even though the majority’s holding provides “the fullest possible protection,” Pennington, 356 N.C. at 574, 573 S.E.2d at 120, it contravenes the activation provision’s requirements and the legislature’s intent to reduce UIM payouts by amounts recovered from all liable parties. Accordingly, the trial court erred in requiring Farm Bureau to make the $350,000 payment. Nevertheless, were UIM coverage properly implicated, I agree with the majority that the awarding of costs and interests against the insurer is limited contractually by the terms of the insured’s policy. Thus, I respectfully concur in part and dissent in part.

. By contrast, some states apply an “excess coverage” approach whereby UIM coverage is activated when a tortfeasor’s liability limits are exceeded by the insured’s damages. 3 Irvin E. Schermer & William J. Schermer, Automobile Liability Insurance § 38:9, at 38-31 (4th ed. Dec. 2004).

. The majority’s analysis and interpretation of the activation provision is relegated to one paragraph with a citation to a case from New York interpreting, against the insurer, a provision in a claimant’s insurance policy. That case did not interpret a statute and offers no support for an interpretation of North Carolina’s statute.

. The relevant portions of the current version of this statute are identical to the 2009 version of the statute, which is the version applicable to this case. White v. Mote, 270 N.C. 544, 555, 155 S.E.2d 75, 82 (1967) (“Laws in effect at the time of issuance of a policy of insurance become a part of the contract. . . .”).

. The legislative history of the statute asserted by Farm Bureau and addressed by the majority provides additional support for this interpretation. Because the activation provision is susceptible to multiple interpretations, the majority’s dismissive “plain meaning” response to Farm Bureau’s argument is unavailing.