Bennett v. Bennett, 2020 NCBC 91.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

BERT L. BENNETT III,

        Plaintiff,

v.

GRAHAM F. BENNETT; ANN BENNETT-PHILLIPS; JAMES H. BENNETT; LOUISE BENNETT; and BENNETT LINVILLE FARM, LLC,

        Defendants,

and

JOHN J. BENNETT and JEANNE R. BENNETT,

        Nominal Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 48

**ORDER AND OPINION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

1.    Many decades ago, the Bennett family acquired a generous patch of land in the mountains of western North Carolina. The Bennett parents hoped to leave it to their children as a legacy. Together, the family formed Bennett Linville Farm, LLC ("Bennett Farm") to hold title to the property and to arrange their interests. The Bennett parents have since passed away. Some of their children are now adversaries, divided over the affairs of Bennett Farm.

2.    The plaintiff, Bert Bennett, is the eldest son and one of Bennett Farm's founding members. Bert's suit is wide-ranging. He claims that Bennett Farm's operating agreement, as amended, is invalid. He also claims that three siblings—Graham Bennett, Ann Bennett-Phillips, and Jim Bennett—have either usurped or abused their positions as managers of Bennett Farm. Among other things, Graham,

Ann, and Jim have authorized numerous capital calls in recent years, purchased the membership interest of another sibling (Louise Bennett), and redeemed Bert's interest without his consent. In broad strokes, Bert seeks to invalidate the amended operating agreement, to unwind the transfer of Louise's interest, and to dissolve Bennett Farm. He faces counterclaims to declare that he is no longer a member or, alternatively, to recover unpaid capital calls.

3. Graham, Ann, Jim, and Bennett Farm have together moved for summary judgment. (ECF No. 101.) Louise, also a defendant, has done the same. (ECF No. 98.) For the reasons stated below, the motions are **GRANTED** in part and **DENIED** in part.

> *Fitzgerald Litigation, by Andrew L. Fitzgerald and D. Stuart Punger, Jr., for Plaintiff Bert L. Bennett III.*
>
> *Bell, Davis & Pitt, P.A., by Allison B. Parker and Kevin G. Williams, for Defendants Graham F. Bennett, Ann Bennett-Phillips, James H. Bennett, and Bennett Linville Farm, LLC.*
>
> *Roberson Haworth & Reese, PLLC, by Andrew D. Irby, for Defendant Louise Bennett.*
>
> *No counsel appeared for Nominal Defendants John J. Bennett and Jeanne R. Bennett.*

Conrad, Judge.

I.
BACKGROUND

4. The Court does not make findings of fact when ruling on motions for summary judgment. The following background, describing the evidence and noting relevant disputes, is therefore intended only to provide context for the Court's analysis and ruling.

5.     By the early 2000s, the Bennett family jointly held several hundred acres of land in western North Carolina. They transferred nearly all of it to Bennett Farm after forming the company in 2007. (*See* Aff. Graham ¶ 8, ECF No. 100.) The exception was a parcel that had been set apart and given to John Bennett and his wife, Jeanne, in 2002. (*See* Aff. Bert ¶ 9, ECF No. 109.1.)[1]

6.     At its beginning, Bennett Farm had eight members: Bert, Graham, Louise, Ann, Jim, Terry Bennett Allen (another sibling), and the Bennett parents. The members approved an operating agreement and named Graham and Ann as managers. (*See* Pl.'s Ex. B ¶ 2.4, Sched. II ["Original Agrmt."].) For a period of time, the Bennett parents funded all operations. (*See* Aff. Craver ¶ 16, ECF No. 71.)

7.     In 2010, the Bennetts' father decided to amend the operating agreement ("2010 Amendment"). He asked Bennett Farm's corporate counsel, Penn Craver, to draft the amendment. (*See* Aff. Craver ¶¶ 17, 18.) The Bennett children were not involved. (*See* Dep. Ann 73:18–24, ECF No. 112.3; Dep. Jim 91:15–19, ECF No. 112.4.) According to Craver, "[t]here was no back and forth" with them about the amendment. (Dep. Craver 25:7–17.)

8.     Confusing matters, discovery in this case turned up two versions of the amendment, each bearing identical signature pages. (*See* Pl.'s Exs. D, E.) In most respects, the two versions are the same. Among other things, each authorizes the

---

[1] Bert filed twelve exhibits (labeled A through L) as a single document, all located at ECF No. 109.1. These exhibits include his affidavit, copies of the operating agreements at issue, some discovery responses, and excerpts of his deposition and those of Graham, Louise, and Penn Craver. Additional excerpts of Bert's deposition testimony appear at ECF Nos. 102.2 and 102.3. Additional excerpts of Louise's deposition testimony appear at ECF No. 63.7.

managers to make capital calls without member consent, loosens the restrictions on a member's right to transfer his or her interest, and permits Bennett Farm to redeem any member's interest upon the consent of members owning at least 75% of the company. (*See* Pl.'s Ex. D §§ 7.2, 9.2, 9.6; Pl.'s Ex. E §§ 7.2, 9.2, 9.6.) But there is a difference: in one version, section 2.4 states that there "shall initially be two (2) Managers of the Company"; in the other, that section states that there "shall be three (3) Managers of the Company." (*Compare* Pl.'s Ex. D § 2.4, *with* Pl.'s Ex. E § 2.4.) A separate schedule lists Jim as the third manager. (*See* Pl.'s Ex. E Sched. II.)

9.  Why each version has the same set of signature pages is a mystery. It appears that each member signed signature pages that were detached from the rest of the amendment. (*See, e.g.*, Aff. Bert ¶ 17.) No one could recall when or how the signature pages became appended to either version. (*See, e.g.*, Dep. Graham 45:7–25; Dep. Craver 31:14–35:9.) It is also not clear whether any member (apart from perhaps the Bennetts' father) read the amendment before signing or knew what it said. (*See, e.g.*, Dep. Graham 30:2–7; Dep. Bert 152:4–21, 258:1–14; Dep. Louise 13:19–22; Dep. Jim 91:15–19.) According to Louise, "The way it is in our family, if Dad tells you to sign something, you sign it." (Dep. Louise 13:15–18.) Bert claims that Graham passed around the signature pages, representing that they were for "an administrative change" to allow the Bennett parents to "giv[e] up their interests" in the company and the land. (Aff. Bert ¶ 17.)

10.  Over time, the membership of Bennett Farm has changed. The Bennett parents, both deceased, transferred their interests in equal shares to the other

members.  (*See* Aff. Craver ¶¶ 9, 23–24.)  Terry later sold her membership interest to the others as well.  (*See* Aff. Craver ¶ 27.)  At the time this suit began, Bennett Farm had five members—Bert, Graham, Ann, Jim, and Louise—with each having a 20% interest.  (*See* Aff. Craver ¶ 27.)

11.     In 2015, a dispute arose over John's property.  A few years earlier, John had given Bennett Farm a right of first refusal to buy his land.  (*See* Aff. Graham ¶ 10.)  Graham, Ann, and Jim approved the transaction in their roles as managers, and Graham signed the right of first refusal on Bennett Farm's behalf.  (*See* Aff. Graham ¶ 10.)  When Bennett Farm later tried to enforce the right, John and Jeanne brought suit to invalidate it.  (*See* Aff. Graham ¶ 13; Aff. Bert ¶ 21.)

12.     Bert sided with John and Jeanne.  He thought Graham, Ann, and Jim were seeking revenge against John for having taken a piece of the family land for himself.  (*See* Aff. Bert ¶¶ 11, 21.)  Bert also balked at the expense of litigation.  From 2017 to 2019, Graham, Ann, and Jim approved eight capital calls totaling nearly $2 million.  (*See* Aff. Graham ¶ 17.)  Bert refused to pay his share.  (*See* Aff. Graham ¶ 19.)  Eventually, Bennett Farm bought John's property in a litigation settlement.  (*See* Aff. Graham ¶ 14.)

13.     While the litigation between Bennett Farm and John was still ongoing, Bert commenced this action in January 2018.  (*See* Compl., ECF No. 4.)  He alleged that the amendment to the operating agreement was not valid and that Graham, Ann, and Jim were never elected as managers of Bennett Farm.  On that basis, he claimed that any actions taken by Graham, Ann, and Jim as managers—including accepting

and enforcing the right of first refusal—were also not valid. The original complaint included a mix of claims requesting declaratory relief, asserting breaches of fiduciary duty and conspiracy, and seeking dissolution of Bennett Farm. John and Jeanne were named as nominal defendants.

14. More disputes arose after the case was filed. Graham, Ann, and Jim barred Bert from the property based on his refusal to respond to capital calls. (*See* Aff. Graham ¶ 21; Aff. Bert ¶ 23.) Following his ban from the property, Bert claims, the other members authorized the construction of a paddleball (or pickleball) court without his input. (*See* Aff. Bert. ¶¶ 18, 23, 24; *see also* Aff. Graham ¶ 50.)

15. In April 2018, Louise announced her intent to sell her membership interest, having grown "sick of" the "family conflict." (Dep. Louise 19:23–20:6.) Although Louise invited Bert to participate at first, she later changed her mind and sold her membership interest to Graham, Ann, and Jim, leaving Bert out. (*See* Aff. Craver ¶ 30.) Bert objected to the sale as a breach of the original operating agreement or, if valid, the 2010 Amendment. Even so, the transfer gave Graham, Ann, and Jim 80% of the membership interest and left Bert with 20%. (*See* Aff. Craver ¶ 31.) At a special member meeting held the following year, Graham, Ann, and Jim voted to redeem Bert's membership interest without his consent in accordance with section 9.6 of the 2010 Amendment. (*See* Aff. Graham ¶¶ 31, 39, 40.)

16. After several amendments to the complaint, Bert now asserts five direct claims and two derivative claims.[2] Bert continues to seek a declaratory judgment—

---

[2] A number of claims have been dismissed. At one point, Terry joined the case as a plaintiff, but her claims and the counterclaims against her were settled and dismissed. (ECF No. 67.)

including a declaration that the 2010 Amendment is "invalid"—and to ask for judicial dissolution of Bennett Farm. (3d Am. Compl. ¶¶ 82, 121, ECF No. 77.) He also claims that the transfer of Louise's interest breached the operating agreement (original or amended), breached the implied covenant of good faith and fair dealing, and amounted to a civil conspiracy. (3d Am. Compl. ¶¶ 104, 105, 108, 110–12.) Separately, Bert brings derivative claims on behalf of Bennett Farm against Graham, Ann, and Jim for breach of fiduciary duty and breach of the 2010 Amendment, if valid. (*See* 3d Am. Compl. ¶¶ 133–38, 139–43.)

17. Bennett Farm asserts two counterclaims against Bert. (*See* Countercl., ECF No. 95.)[3] First, Bennett Farm asks the Court to declare that the 2010 Amendment is valid and that Graham, Ann, and Jim have successfully redeemed Bert's membership interest. (*See* Countercl. ¶¶ 56–58.) In the alternative, Bennett Farm asserts a counterclaim for breach of contract, alleging that Bert breached the 2010 Amendment by failing to pay his pro rata share of the eight capital calls. (*See* Countercl. ¶¶ 59–71.)

18. Graham, Ann, Jim, and Bennett Farm have moved for summary judgment on all of Bert's claims and Bennett Farm's counterclaims. (*See* ECF No. 101.) Louise

---

Bert also voluntarily dismissed his requests for monetary relief against Louise; she remains a defendant because Bert continues to challenge the validity of the transfer of her interest. (ECF No. 40.) And in earlier opinions, the Court dismissed other claims and counterclaims. *See Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *12–21 (N.C. Super. Ct. Mar. 15, 2019) (dismissing Bert's individual claim for breach of fiduciary duty); *Bennett v. Bennett*, 2019 NCBC LEXIS 47, at *1–4 (N.C. Super. Ct. Aug. 6, 2019) (dismissing individual claims brought by Graham, Ann, and Jim for Bert's alleged failure to make capital contributions).

[3] The Defendants' Answer to Third Amended Complaint and Counterclaims restarts the paragraph numbering as it transitions from one section to another. References to that filing in this Opinion are found within the section "Counterclaims Against Bert L. Bennett, III."

has also moved for summary judgment with regard to the claims related to the transfer of her interest. (*See* ECF No. 98.) The motions have been fully briefed, and the Court held a hearing on June 10, 2020. The motions are ripe for decision.

## II.
## LEGAL STANDARD

19. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party," taking the non-movant's evidence as true and drawing inferences in its favor. *Furr v. K-Mart Corp.*, 142 N.C. App. 325, 327, 543 S.E.2d 166, 168 (2001) (internal citations and quotation marks omitted). The moving parties "bear[] the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted).

20. As for Bennett Farm's motion for offensive summary judgment on its own claims, "a greater burden must be met." *Brooks v. Mt. Airy Rainbow Farms Ctr., Inc.*, 48 N.C. App. 726, 728, 269 S.E.2d 704, 705 (1980); *accord Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578, 329 S.E.2d 417, 418 (1985). "[The movant] must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721, 329 S.E.2d 728, 729 (1985); *see also Kidd v. Early*,

289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976) (same).  For that reason, it is "rarely . . .

proper to enter summary judgment in favor of the party having the burden of proof."

*Blackwell v. Massey*, 69 N.C. App. 240, 243, 316 S.E.2d 350, 352 (1984).

III.
ANALYSIS

21.     Nearly every claim depends to some degree on whether the 2010

Amendment is valid.  Its rules for interest transfers, redemptions, and capital calls

are different from and more permissive than those in the original operating

agreement.  Because Bert seeks a declaratory judgment that the amendment is not

valid, the Court begins there.

A.  Declaratory Judgment

22.     The claim for declaratory judgment began as a request for nine declarations.

One fell away in a stipulation of dismissal.  (*See* 3d Am. Compl. ¶ 82(g); Stip.

Dismissal, ECF No. 67.)  Graham, Ann, and Jim move for summary judgment as to

the remaining eight.

23.     **Validity of the 2010 Amendment.**  Bert asks the Court to declare that the

2010 Amendment is invalid.  (*See* 3d Am. Compl. ¶ 82(a).)  Graham, Ann, and Jim

argue that they are entitled to summary judgment because every member, including

Bert, signed the amendment.  (*See* Defs.' Br. in Supp. 9–13, ECF No. 102.)

24.     The wrinkle here is that the signature pages were appended to two versions

of the amendment, one stating that Bennett Farm has two managers and another

stating that it has three.  (*Compare* Pl.'s Ex. D § 2.4, *with* Pl.'s Ex. E § 2.4.)  Graham,

Ann, and Jim call this a "red herring" because Craver identified the three-manager

version as the "true and correct version." (Defs.' Br. in Supp. 11–12; *see also* Aff. Craver ¶ 18.) But Craver also testified in his deposition that he was not present when the signature pages were signed, does not know when they were signed, and does not know which version was executed. (*See* Dep. Craver 31:10–21, 33:2–35:9.) His testimony is far from conclusive.

25. No other witness could identify the correct version with certainty. Bert contends that he was misled about the amendment. As he tells it, Graham gave him a signature page but nothing else and said it "was an administrative change." (Aff. Bert ¶ 17.) Graham, Ann, and Jim argue that Bert cannot claim ignorance as a defense because he had a duty to read the amendment before signing. *See, e.g.*, *Mills v. Lynch*, 259 N.C. 359, 362, 130 S.E.2d 541, 543–44 (1963) (discussing duty to read contract before signing). That argument assumes that Bert signed a particular document, but the same signature appears on two different amendments. It is unclear whether Bert intended to sign version one, version two, or something entirely different. Because the evidence supports an inference that Bert "did not in fact sign and deliver" any particular version of the amendment, his failure to read it does not support summary judgment. *GECMC 2006-C1 Carrington Oaks, LLC v. Weiss*, 2017 N.C. App. LEXIS 532, at *14 (N.C. Ct. App. July 5, 2017) (unpublished) (quoting *Carolina Mills Lumber Co. v. Huffman*, 96 N.C. App. 616, 619, 386 S.E.2d 437, 439 (1989)).

26. The testimony of Bert's siblings is just as equivocal. Louise "do[es not] recall" whether she was given the entire amendment or just a signature page. (Dep.

Louise 13:12–22.) Graham could not recall seeing either version of the amendment before signing or any details about when, where, or how the signature pages were signed. (*See* Dep. Graham 30:2–18, 45:16–25.) Likewise, Ann could not recall when she signed the signature pages, (*see* Dep. Ann 74:21–75:1, 76:7–18), and Jim could not recall reading any version of the amendment before signing, (*see* Dep. Jim 91:12–19). In their reply brief, Graham, Ann, and Jim concede that "no one can explain how or when the signature page" became attached to one version or the other. (Defs.' Reply Br. 5, ECF No. 112.)

27. This evidence is more than enough to create a jury question about the amendment's validity. "The essence of any contract is the mutual assent of [all] parties to the terms of the agreement so as to establish a meeting of the minds." *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) (citation omitted). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) (citation and quotation marks omitted). Nothing in the record definitively shows whether the amendment was final before the members signed the signature pages. The existence of two versions could suggest that it was not.

28. To be sure, "a valid contract may be signed in blank and substantial terms filled in at a later date at the direction of the signer." *O'Grady v. First Union Nat'l Bank*, 296 N.C. 212, 221, 250 S.E.2d 587, 594 (1978). Viewed in a light most favorable to Bert, however, the evidence suggests that the Bennett children did not direct how

the amendment would be drafted and did not know what it said. There is a question of fact as to whether their signatures manifest the intent to be bound by one version of the amendment or the other. *See, e.g.*, *Midwest Mfg. Holding, L.L.C. v. Donnelly Corp.*, 1998 U.S. Dist. LEXIS 1398, at *13–14 (N.D. Ill Feb. 5, 1998) (signed version differed from final version); *Chariot Grp., Inc. v. Am. Acquisition Partners, L.P.*, 751 F. Supp. 1144, 1151 (S.D.N.Y. 1990) ("[The] undisputed facts compel the conclusion that the defendants signed the signature pages for their convenience only and not as an objective manifestation of their intent to be bound.").

29. Bert has shown that there is a genuine issue of material fact regarding the validity of the 2010 Amendment. The Court therefore denies Graham, Ann, and Jim's motion for summary judgment as to that issue.

30. **Capital Calls and Member Interests.** Three other requested declarations depend, at least in part, on the validity of the amendment. Bert asks for declarations that capital calls may not be enforced except with a member's written consent (as stated in the original agreement); that he and his family may access Bennett Farm's property even though he has not responded to capital calls; and that he, Graham, Ann, Jim, and Louise held equal membership interests as of April 2018. (*See* 3d Am. Compl. ¶¶ 82(d), (h), 83).) Graham, Ann, and Jim contend that Bert is not entitled to any of these declarations if the 2010 Amendment is valid. (*See* Defs.' Br. in Supp. 12–13.) Because the validity of the amendment is a jury question, the Court denies the motion for summary judgment as to these three declarations.

31.    **Managerial Authority.**  It appears that Bert has abandoned his requests for the four remaining declarations.  These include declarations that Bennett Farm has no validly elected managers, that no Defendant may exercise managerial authority, and that the acceptance and enforcement of the right of first refusal on John's property were unauthorized as a result.  (*See* 3d Am. Compl. ¶ 82(b), (c), (e), (f).)  All are rooted in the theory that the members intended Bennett Farm to be member-managed and, thus, never elected or appointed managers.  (*See* 3d. Am. Compl. ¶¶ 24–27.)  When deposed, however, Bert conceded that Graham and Ann "are the managers" of Bennett Farm.  (Dep. Bert 49:12–21, 122:2–5.)

32.    Graham, Ann, and Jim argue that this concession precludes each declaration.  (*See* Defs.' Br. in Supp. 12–13.)  Bert offers no response.  The Court therefore concludes that the undisputed evidence supports the entry of summary judgment as to these four declarations.  *See Brewster v. Powell Bail Bonding, Inc.*, 2020 NCBC LEXIS 27, at *9 (N.C. Super. Ct. Mar. 11, 2020); *Bucci v. Burns*, 2020 NCBC LEXIS 79, at *17 (N.C. Super. Ct. June 30, 2020).

B.  Derivative Claims

33.    Bert asserts two derivative claims against Graham, Ann, and Jim.  The first is for breach of the fiduciary duties they owe to Bennett Farm.  (*See* 3d Am. Compl. ¶¶ 133–38.)  The second is for breach of the 2010 Amendment, assuming that the amendment is valid.  (*See* 3d Am. Compl. ¶¶ 139–43.)  Graham, Ann, and Jim seek summary judgment on both claims.

34. **Breach of Fiduciary Duty.** To establish a breach of fiduciary duty, a plaintiff must show the existence of a fiduciary duty, a breach of that duty, and injury proximately caused by the breach. *See Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013). As managers, Graham, Ann, and Jim owe a fiduciary duty to Bennett Farm. The claim for breach rests on several allegedly improper acts: (1) retaining counsel to amend the operating agreement; (2) incurring fees to draft the right of first refusal, to enforce it through litigation, and to buy John's property in the eventual settlement; (3) allowing Jim to build a paddleball court on Bennett Farm's property; and (4) pursuing litigation against Bert for his failure to make capital contributions. (*See* 3d Am. Compl. ¶ 136.)

35. Graham, Ann, and Jim challenge each allegation. (*See* Defs.' Br. in Supp. 18–20.) They deny having anything to do with drafting the 2010 Amendment, pointing to evidence that their father hired Craver to draft it. (*See* Aff. Craver ¶¶ 17, 18.) Next, they point to Bert's admission that the right of first refusal benefitted Bennett Farm. (*See* Dep. Bert 17:6–10, 39:18–24, 67:17–24.) Third, citing Graham's affidavit, they maintain that Jim paid for the paddleball court out of his own pocket and that it has caused no damage. (*See* Aff. Graham ¶¶ 50–52.) Last, as to this litigation, Graham, Ann, and Jim contend that they exercised their authority as managers in good faith to sue a delinquent member. (*See* Defs.' Br. in Supp. 18.) Each decision, they insist, is also protected by the business judgment rule. *See* N.C.G.S. § 57D-3-21; *see also Mooring Capital Fund, LLC v. Comstock N.C., LLC,*

2009 NCBC LEXIS 32, at *12 (N.C. Super. Ct. Nov. 13, 2009) ("The managers of an LLC may also be entitled to the protections of the 'business judgment rule.' ").

36.     As an additional defense, Graham, Ann, and Jim assert the statute of limitations. (*See* Defs.' Br. in Supp. 21.)  The usual limitations period for a claim for breach of fiduciary duty is three years. *See Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005).  The events related to drafting the amendment to the operating agreement and to negotiating the right of first refusal took place, respectively, in 2010 and 2014—both long before Bert filed his derivative claims in August 2019. (*See* Aff. Craver ¶¶ 17, 18; Aff. Bert ¶ 21.)

37.     It was Bert's "responsibility to rebut these arguments by identifying the evidence that supports his claim and articulating how that evidence creates a genuine issue of material fact for trial." *Brewster*, 2020 NCBC LEXIS 27, at *9.  He has not done so.  His response does not mention the alleged breaches or respond to any of these arguments, including those based on the business judgment rule and the statute of limitations. (*See* Pl.'s Opp'n 22–23, ECF No. 109.)  Instead, Bert argues that Graham, Ann, and Jim's purchase of Louise's interest was not only a breach of the operating agreement (whichever controls) but also a breach of fiduciary duty. (*See* Pl.'s Opp'n 23.)  This theory appears nowhere in the third amended complaint and, thus, "is no defense to summary judgment." *Brown v. Secor*, 2020 NCBC LEXIS 134, at *20 (N.C. Super. Ct. Nov. 13, 2020); *see also Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at *42–43 n.15 (N.C. Super. Ct. Feb. 27, 2015).

38. In short, Bert has not "come forward with specific facts establishing the presence of a genuine factual dispute for trial." *Liberty Mut. Ins.*, 356 N.C. at 579, 573 S.E.2d at 124 (citation omitted). The Court grants summary judgment in favor of Graham, Ann, and Jim as to the derivative claim for breach of fiduciary duty.

39. **Breach of Contract.** The second derivative claim presumes that the 2010 Amendment is valid. Section 7.4 states that any loan by a member to Bennett Farm "shall not be considered a Capital Contribution." (Pl.'s Ex. D § 7.4; Pl.'s Ex. E § 7.4.) As alleged, Graham, Ann, and Jim approved a series of capital calls and then treated their own capital contributions as loans, thus breaching section 7.4. (*See* 3d Am. Compl. ¶¶ 139–43.) Graham, Ann, and Jim concede that they classified their payments as loans but argue that doing so was not a breach. (*See* Aff. Graham ¶ 22.) This is a question of fact for the jury. The Court therefore denies the motion for summary judgment as to the derivative claim for breach of contract.

## C. Breach of Contract (Individual Claim)

40. Bert alleges that the transfer of Louise's interest to Graham, Ann, and Jim was a breach of the operating agreement, regardless of which controls. (*See* 3d Am. Compl. ¶¶ 104, 105.) He also claims a breach of the implied covenant of good faith and fair dealing. (*See* 3d Am. Compl. ¶¶ 107, 108.) Louise seeks summary judgment on both claims. So do Graham, Ann, and Jim. Throughout the briefing, the parties treat the two claims as if they are one.

41. It is undisputed that Louise did not comply with the original operating agreement. Section 9.2 of that agreement requires, among other things, that a

member must offer his or her interest in writing to Bennett Farm before transferring it to anyone else. (*See* Original Agrmt. § 9.2(a).) Louise did not make that offer or comply with other conditions on transfer. (*See, e.g.*, Aff. Craver ¶¶ 29, 30.) Whether her noncompliance amounts to a breach depends on which operating agreement governs. As explained, that is a jury question.

42. Louise argues that she should prevail even if the 2010 Amendment is not valid. Her argument is based on a statute. Section 57D-2-32(b) states that a member "will not be liable" for "reliance on the provisions of the operating agreement." N.C.G.S. § 57D-2-32(b). This language, Louise contends, immunizes her reliance on the 2010 Amendment. (*See* Louise Br. in Supp. 7, ECF No. 99.) It is far from clear, though, whether "reliance on the provisions of the operating agreement" includes reliance on an invalid operating agreement. N.C.G.S. § 57D-2-32(b). Neither side cites any case interpreting the statute or addressing that issue.

43. In any event, the evidence of Louise's compliance with the 2010 Amendment—and therefore her reliance on it—is disputed. Under that agreement, any member may transfer his or her interest to "family . . . for estate and gift tax planning purposes . . . ." (Pl.'s Ex. D § 9.2; Pl.'s Ex. E § 9.2.) Louise contends that she transferred her interest to avoid financial hardship caused by membership in Bennett Farm and ongoing litigation. Preservation of wealth, she contends, is a suitable estate planning purpose. (*See* Louise Br. in Supp. 10–11.) Graham, Ann, and Jim agree and make similar arguments. (*See* Defs.' Br. in Supp. 13–14.)

44. Other evidence suggests that Louise had a different purpose for making the transfer. In her deposition, Louise testified that her "number one reason" for wanting to sell was "family conflict," not wealth preservation. She "wanted to be away from it all" and was "sick of it." (Dep. Louise 19:23–20:6.) When Louise announced her intent to transfer her interest, she used language drafted by Graham (starting with "To the managers" and ending with "Regards[,] Louise"), which included his suggestion to refer to her "estate planning" needs. (Pl.'s Ex. L.) This evidence could show that the estate-planning rationale was a pretext and that Louise transferred her interest for other reasons not sanctioned by the 2010 Amendment. If credited by a jury, the evidence could support the conclusion that the transfer of Louise's interest was a breach of the 2010 Amendment and that she did not rely on that agreement as she contends.

45. Thus, the Court denies the motions for summary judgment as to Bert's individual claims for breach of contract and breach of the covenant of good faith and fair dealing.

## D. Civil Conspiracy

46. The conspiracy claim is also premised on the transfer of Louise's interest. (*See* 3d Am. Compl. ¶ 112.) In a single sentence without citation to the record, Graham, Ann, and Jim argue that there is no evidence of a conspiracy or of any injury to Bert. (*See* Defs.' Br. in Supp. 15.) This cursory argument is not enough to carry their burden to show an absence of any genuine issue of material fact. *See Liberty Mut. Ins.*, 356 N.C. at 579, 573 S.E.2d at 124; *Brown*, 2020 NCBC LEXIS 134, at \*32.

47.     In any event, the evidence shows that Graham encouraged Louise to say that she intended to transfer her interest for "estate planning" purposes and provided suggested language. (Pl.'s Ex. L.) Ann and Jim were copied on that e-mail. (Pl.'s Ex. L.) Louise then transferred her interest to Graham, Ann, and Jim and chose not to transfer any part of it to Bert. (*See* Aff. Craver ¶¶ 28–30.) Coupled with Louise's testimony that she transferred her interest to avoid family conflict, this evidence is enough to raise an issue of fact regarding whether her estate-planning rationale was a pretext. If the jury reaches that conclusion, it could also find that this pretext forms the basis of a civil conspiracy. Therefore, the Court denies the motions for summary judgment as to this claim.[4]

### E.  Judicial Dissolution

48.     Bert asks the Court to dissolve Bennett Farm. (*See* 3d Am. Compl. ¶¶ 120–22.) He claims that "dissolution of [Bennett Farm] pursuant to N.C.G.S. § 57D-6-02(2) is necessary . . . to protect" his "rights and interests." (3d Am. Compl. ¶ 121.) These include at least his right to visit Bennett Farm's property and to receive notice before the land is materially altered. (*See* Pl.'s Opp'n 12, 13.)

49.     In part, Bert invokes the *Meiselman* line of cases, governing claims for dissolution by shareholders in closely held corporations. *See Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1983). Graham, Ann, and Jim argue that

---

[4] As noted in an earlier opinion, some courts in other jurisdictions have held that a breach of contract may not support a claim for civil conspiracy. *See Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *29 n.8 (N.C. Super. Ct. Mar. 15, 2019) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 522, 28 Cal. Rptr. 2d 475, 869 P.2d 454 (1994)). The parties have not raised this issue, however, and the Court therefore does not address it.

the evidence does not support dissolution under *Meiselman*. (*See* Defs.' Br. in Supp. 16–17.) North Carolina appellate courts "have not yet addressed whether a claim pursuant to section 57D-6-02(2) is governed by the same principles as a *Meiselman* claim." *Brady v. Van Vlaanderen*, 2017 NCBC LEXIS 61, at *32 (N.C. Super. Ct. July 19, 2017).

50. It would be premature to decide disputes about dissolution for two significant reasons. First, Bert may not have standing to seek dissolution. Graham, Ann, and Jim voted to redeem his interest under the terms of the 2010 Amendment. If a jury determines that the amendment is valid, it appears that Bert would not be a member of Bennett Farm and would therefore lack standing to seek dissolution. Second, if the jury instead determines that the amendment is invalid, that would mean that the parties have operated under an invalid agreement for ten years, potentially negating interest transfers, the involuntary redemption of Bert's interest, and numerous capital calls. How the factfinder resolves these issues will necessarily inform any decision about dissolution. Summary judgment is not appropriate.

## F. Counterclaims

51. Bennett Farm asserts two counterclaims against Bert. First, Bennett Farm asks the Court to declare that the 2010 Amendment is valid and that it therefore had the right to redeem Bert's membership interest. (*See* Countercl. ¶¶ 56–58.) In the alternative, Bennett Farm claims that Bert breached the 2010 Amendment by failing to pay his share of eight capital calls. (*See* Countercl. ¶¶ 59–71.) Both counterclaims depend on the validity of the amendment, which is an issue to be resolved at trial.

Thus, the Court denies Bennett Farm's motion for summary judgment as to its own counterclaims.

IV.
CONCLUSION

52.    For the reasons given above, the Court **DENIES** Louise's motion for summary judgment.

53.    The Court **GRANTS** in part and **DENIES** in part Graham, Ann, Jim, and Bennett Farm's motion for summary judgment as follows:

   a. The Court **GRANTS** the motion as to the claim for declaratory judgment to the extent that it is based on the declarations requested in subparagraphs 82(b), (c), (e), and (f) of the third amended complaint. These parts of the claim are **DISMISSED** with prejudice. The Court **DENIES** the motion as to the claim for declaratory judgment in all other respects.

   b. The Court **GRANTS** the motion as to the derivative claim for breach of fiduciary duty. This claim is **DISMISSED** with prejudice.

   c. The Court **DENIES** the motion as to the following claims: Bert's direct claims for breach of contract, breach of the covenant of good faith and fair dealing, civil conspiracy, and judicial dissolution; Bert's derivative claim for breach of contract; and Bennett Farm's counterclaims for declaratory judgment and for breach of contract.

**SO ORDERED**, this the 16th day of December, 2020.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases