IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-91

No. COA21-323

Filed 15 February 2022

Wake County, No. 15 CVS 9786

DEPARTMENT OF TRANSPORTATION, Plaintiff,

v.

BLOOMSBURY ESTATES, LLC; BLOOMSBURY ESTATES CONDOMINIUM HOMEOWNERS ASSOCIATION, INC., Defendants.

Appeal by defendant Bloomsbury Estates Condominium Homeowners Association, Inc. from order entered 3 March 2021 by Judge Vinston M. Rozier, Jr. in Wake County Superior Court. Heard in the Court of Appeals 11 January 2022.

*Thomas, Ferguson & Beskind, LLP, by Jay H. Ferguson, for defendant-appellee Bloomsbury Estates, LLC.*

*Law Firm Carolinas, by T. Keith Black and Harmony W. Taylor, for defendant-appellant Bloomsbury Estates Condominium Homeowners Association, Inc.*

TYSON, Judge.

¶ 1 Bloomsbury Estates Condominium Homeowners Association, Inc. ("the Association") appeals from an order of the trial court distributing settlement proceeds. We reverse in part, affirm in part, and remand.

## I. Background

¶ 2 Bloomsbury Estates is a residential condominium complex located in Raleigh.

The Association is the unit owners' association established under N.C. Gen. Stat. § 47C (2021). Bloomsbury, LLC created Bloomsbury Estates by filing a Declaration of Condominium ("Declaration") in the Wake County Registry at book 136211, page 2702 on 13 July 2009.

## A. Phased Development Rights

¶ 3 Under the terms of the Declaration, Bloomsbury, LLC planned to develop Bloomsbury Estates in two phases ("Phase I" and "Phase II"). Phase I was constructed with fifty-six units contained within a multi-story building. Phase II was to include the construction of six additional units in the Phase I building and the construction of a new building containing up to eighty-five units. Prior to filing the Declaration, Bloomsbury, LLC had submitted a site plan for the construction of a 110-unit condominium complex consisting of two seven-story buildings. The site plan was approved by the City of Raleigh on 25 July 2006.

¶ 4 Section 8 of the Declaration addressed the right to construct Phase II, providing, *inter alia*: "[Bloomsbury, LLC] reserves the following special declarant rights for the property: (a) To complete, within five years of the recordation of this Declaration of Condominium, any and all improvements indicated on the plats and plans, up to a maximum of 140 units."

¶ 5 Bloomsbury, LLC assigned its declarant rights in a written assignment to Bloomsbury Estates, LLC ("Developer") which was recorded on 25 May 2011 in the

Wake County Registry at book 14356, page 2386. Developer amended the Declaration five times. The Fifth Amendment to the Bloomsbury Estates Declaration of Condominium ("Fifth Amendment") was recorded on 8 March 2013, in the Wake County Registry at book 15176, page 1399. The Fifth Amendment extended the time in which Developer could construct Phase II until 13 July 2017.

## B. DOT Condemnation

¶ 6 Phase I was completed and all of the individual units had been sold to third parties by 27 July 2015. On that date, the North Carolina Department of Transportation ("DOT") filed a declaration of taking and notice of deposit against the Association, Developer, and Wake County ("DOT Action"). DOT named Wake County as a defendant in the DOT Action because of a purported lien for unpaid *ad valorem* taxes Wake County had asserted upon Bloomsbury Estates' property. DOT sought to acquire a portion of the Association's common area lying outside of the building constructed in Phase I for the construction of Raleigh's Union Station.

¶ 7 The DOT Action sought a fee simple taking of the property. The construction plans for the Raleigh Union Station also required a temporary construction easement over other portions of Bloomsbury Estates' property. The temporary construction easement remained in place until the Raleigh Union Station project was completed around 13 September 2017. The use of the easement purportedly made it impossible for Developer to proceed with construction of Phase II within the Fifth Amendment's

deadline of 13 July 2017.

¶ 8        While the DOT Action was pending, Developer filed a civil complaint in Wake County on 7 December 2015, docketed as 15 CVS 16076. On 27 May 2016, Developer filed an amended complaint against the Association and the individual unit owners. Developer asserted a claim for an anticipatory breach of contract based upon the representations the Association was allegedly repudiating Developer's right to develop and construct Phase II until 13 July 2017.

¶ 9        Developer's action also sought a declaratory judgment concluding it had retained the right to develop and construct Phase II. Developer also sought to reform the Declaration to extend the time to develop Phase II by an amount of time *force majeure* equal to the delay caused by the DOT's temporary construction easement.

¶ 10        On 29 July 2016, the Association filed its response in 15 CVS 16076, which contained a motion to strike, motions to dismiss, an answer, affirmative defenses, and counterclaims, asserting:

> (1) the time limit expired within which development rights shall have been exercised pursuant to the Declaration and North Carolina law, and the time limit cannot be extended as a matter of North Carolina law, (2) the [Fifth A]mendment was not consented to by the requisite number of unit owners, (3) the [Fifth A]mendment was not signed by the requisite number of unit owners, (4) the amendment was not consented to by mortgage holders, (5) the Amended Complaint fails to allege a distinct, unequivocal and absolute refusal to perform a whole contract or a covenant going to the whole consideration of a contract, (6) unit

owners' property subject at any time to any development rights pursuant to plats and plans has been taken in whole or in part, (7) any development rights in unit owners' property terminated or ceased, (8) the Court cannot reform a void instrument, (9) the Amended Complaint fails to allege mistake, or any proper, affirmative grounds for judicial reformation of a written instrument, (10) a taking of unit owners' property was reasonably foreseeable, (11) the Court cannot make a new amendment or Declaration, (12) the Court cannot make an illegal amendment or Declaration, (13) the New LLC elected the remedy of damages.

¶ 11 While the DOT Action was pending, the Association filed a civil complaint on 31 December 2016, docketed as 16 CVS 15136 against Developer and another entity, Sammie, LLC, alleging twelve causes of action including, *inter alia*, a declaratory judgment action to determine Developer's rights to develop Phase II in Bloomsbury Estates and to quiet title. The Association's claims asserted in 16 CVS 15136 remain pending for trial in Wake County Superior Court.

¶ 12 On 21 June 2017, all parties to the DOT Action entered into a consent judgment which resolved the total amount of just compensation owed by DOT. The consent judgment did not address the apportionment of the just compensation as between Developer and the Association.

¶ 13 Developer filed a motion for partial summary judgment in 15 CVS 16076 on 3 July 2017, invoking the one-year statute of limitations articulated in N.C. Gen. Stat. § 47C-2-117(b) (2021) ("[N]o action to challenge the validity of an amendment adopted

by the [condominium] association pursuant to this section or pursuant to G.S. 47C-1-5(a)(8) may be brought more than one year after the amendment is recorded.").

¶ 14 Following a hearing, the trial court entered an order allowing Developer's motion for partial summary judgment by finding the one-year statute of limitations in N.C. Gen. Stat. § 47C-2-117(b) barred the Association from challenging the validity of the Fifth Amendment. The Association filed a notice of appeal in 15 CVS 16076 to this Court on 29 September 2017, and then voluntarily withdrew its appeal on 5 January 2018.

¶ 15 The remaining issues in 15 CVS 16076 are pending trial in Wake County Superior Court. By order entered 4 December 2020, the issues in 15 CVS 16076 and 16 CVS 15136 were consolidated for trial. That consolidation order was not appealed.

¶ 16 Developer filed a motion on 16 January 2018 pursuant to N.C. Gen. Stat. § 136-108 in the DOT Action. *See* N.C. Gen. Stat. § 136-108 (2021) ("After the filing of the plat, the judge, upon motion and 10 days' notice by either the Department of Transportation or the owner, shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken."). Developer asserted that the validity of the Fifth Amendment had already been determined by the 29 September 2017 Order in 15 CVS 16076. Developer further asserted the Association was prohibited by the

doctrines of issue preclusion and collateral estoppel from re-litigating the validity of the Fifth Amendment.

¶ 17        On 11 April 2018, the trial court entered an order on Developer's 16 January 2018 motion. The order found: "the [Association] is precluded from re-litigating the issue of the validity of the Fifth Amendment and it is further ordered that the Fifth Amendment is valid, and the parties are bound by the rights and obligations contained therein." The Association appealed. This Court dismissed the appeal as interlocutory since the Association did not assert a substantial right, which was affected by the 11 April 2018 order. *See DOT v. Bloomsbury Estates, LLC*, 264 N.C. App. 249, 823 S.E.2d 694, 2019 WL 1040367, at *6. (2019) (unpublished).

¶ 18        Developer and the Association sought appraisals. Developer's appraisal, performed by Integra Realty Resources and M. Scott Smith, MAI dated 24 June 2019 valued the lot before the DOT taking at $3,860,000 and $1,100,000 after the taking. The Association's appraisal, performed by Catherine Edmond, MAI and Hector Ingram, MAI, dated 12 November 2019 valued the lot at $3,350,000 before the taking and $910,000 after the taking. This appraisal also laid out the compensation for both Phase I and Phase II in three scenarios ("Scenario One," "Scenario Two," and "Scenario Three"). The appraisal allocated the compensation for Phase I as $1,510,000 and Phase II as $2,440,000 with total compensation as $3,950,000.

¶ 19        In Scenario One, Developer had lost all rights to develop Phase II and the

entire compensation was paid to the Association. In Scenario Two, Developer had the right to develop Phase II, but it lost the right as a result of the temporary construction easement. Developer was allocated $3,350,000 and the Association was allocated $600,000. In Scenario Three, Developer continues to hold the right to develop Phase II, but as "an interest with a diminished value." Developer was allocated $2,440,000, the difference between the value before the taking and after the taking, and the Association was allocated $1,510,000.

¶ 20 The Association filed a motion to consolidate the DOT Action, 15 CVS 16076, and 16 CVS 15136 on 26 November 2019. Developer filed a motion for summary judgment on 13 July 2020.

¶ 21 Following a hearing on 20 July 2020, the trial court entered an order granting summary judgment in favor of the Association and consolidating the DOT Action, 15 CVS 16076, and 16 CVS 15136. The order also granted summary judgment pursuant to Scenario Two in the Association's appraisal. On 26 August 2020, the Association filed a motion to amend the summary judgment order and/or for reconsideration of the motion for summary judgment order pursuant to N.C. Gen. Stat. § 1A-1, Rules 59 and 60 (2021). The trial court entered an order on 4 December 2020 granting the motion to amend in part by only consolidating the actions in 15 CVS 16076 and 16 CVS 15136 and not consolidating the DOT Action.

¶ 22 The trial court entered an order and final judgment on 3 March 2021. In the

order, the trial court valued the interest in the property and found Developer was entitled to $3,350,000 and the Association was entitled to $600,000. The trial court further found Developer and the Association had incurred $894,897.75 in attorney's fees. The trial court apportioned the attorney's fees using the same percentage as the valuation and allocated $758,963.91 to Developer and $135,934.97 to the Association. The trial court further found property taxes paid to Wake County on behalf of Developer were $71,466.87.

¶ 23        The trial court apportioned the $779,050 deposit by the DOT using the same percentage as the valuation and attorney's fees and apportioned $660,713.29 to Developer. The trial court determined the sum to calculate the amount of prejudgment interest by deducting Developer's pro-rated portion of the deposit of $660,713.29 from the total damages of 3,350,000 to total $2,689,286.71. The trial court determined the prejudgment interest due Developer totaled $409,655.73.

¶ 24        The trial court further determined the total damages due Developer by adding the interest in the property, $3,350,000, and the prejudgment interest, $409,655.73 to total $3,759,655.73.

¶ 25        The trial court also found N.C. Gen. Stat. 47C-1-107 (2021) required Developer to be fully compensated before distributing to the Association. The trial court deducted from Developer's total damages and prejudgment interest of $3,759,655.73, the prorated portion of Developer's legal fees and expenses of $758,963.91 and the

property taxes paid on behalf of Developer of $71,466.87 to award $2,929,224.95 to Developer. The trial court awarded the Association $54,410.43. The trial court ordered the law firm of Cranfill, Sumner & Hartzog LLP to disperse $2,929,224.95 to Developer and $54,410.43 to the Association. The Association appealed.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III. Issues

The Association argues the trial court erred in granting summary judgment and failing to consolidate the DOT Action with 15 CVS 16076 and 16 CVS 15136.

## IV. 3 March 2021 Order

## A. Standard of Review

North Carolina Rule of Civil Procedure 56(c) allows a moving party to obtain summary judgment upon demonstrating "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show they are "entitled to a judgment as a matter of law" and "there is no genuine issue as to any material fact." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2021).

A material fact is one supported by evidence that would "persuade a reasonable mind to accept a conclusion." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted). "An issue is material if the facts alleged would . . . affect the result of the action[.]" *Koontz v. City of Winston-Salem*, 280 N.C.

513, 518, 186 S.E.2d 897, 901 (1972). When reviewing the evidence at summary judgment: "[a]ll inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988) (citation omitted).

¶ 30    "The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citation omitted). "This burden may be met by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Id.* (citation and internal quotation marks omitted).

¶ 31    On appeal, "[t]he standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted).

## B. Analysis

¶ 32    The Association argues the trial court erred in granting summary judgment and apportioning the DOT's award and asserts genuine issues of material fact exist in Developer's rights to construct Phase II following the expiration of the development period allowed in the Fifth Amendment. The facts surrounding the claims in 15 CVS 16076 and 16 CVS 15136 govern the apportionment of the settlement funds in the DOT Action. These material facts must be resolved before the DOT's consented-to

settlement proceeds can be apportioned and dispersed by Cranfill, Sumner & Hartzog LLP.

¶ 33 The valuations of Developer's and the Association's claims to the settlement proceeds involve opinions of value by appraisers. A jury should be allowed to determine the credibility of each appraiser and examine their opinions of value. *See Thompson v. Bradley*, 142 N.C. App. 636, 642, 544 S.E.2d 258, 262 (2001) (holding jury should be allowed to consider the credibility of accident reconstruction expert).

¶ 34 We reverse the trial court's entry of summary judgment and remand for further proceedings. Because we reverse the judgment and remand, we need not reach the Association's other issues raised on appeal concerning the calculation and distribution of DOT settlement funds.

## V. The Association's Motion to Consolidate

### A. Standard of Review

¶ 35 North Carolina Rule of Civil Procedure 42 provides:

> When actions involving a common question of law or fact are pending in one division of the court, the judge may order a joint hearing or trial of any or all the matters in issue in the actions; he may order all the actions consolidated; and he may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

N.C. Gen. Stat. § 1A-1, Rule 42(a) (2021).

¶ 36 "Whether or not consolidation of cases for trial, where permissible, will be

ordered is in the discretion of the court." *Phelps v. McCotter*, 252 N.C. 66, 66, 112 S.E.2d 736, 737 (1960) (per curiam) (citations omitted). An appellant "must not only show a clear abuse of discretion by the trial court in denying its motion, but must also show injury or prejudice arising therefrom." *Barrier Geotechnical Contractors, Inc. v. Radford Quarries of Boone, Inc.*, 184 N.C. App. 741, 744, 646 S.E.2d 840, 841 (2007) (citations and internal quotation marks omitted).

## B. Analysis

¶ 37    The DOT Action, and the issues in 15 CVS 16076 and 16 CVS 15136 share a common nucleus of basic facts. These three cases share common legal issues. The claims asserted in 15 CVS 16076 and 16 CVS 15136 were consolidated. The issues asserted in 15 CVS 16076 and 16 CVS 15136 can be fully litigated and resolved, while the distribution of the consented-to funds from the DOT Action can be completed following final judgments in the combined cases. *See Kanoy v. Hinshaw*, 273 N.C. 418, 424, 160 S.E.2d 296, 301 (1968) ("[I]t is the rule in this jurisdiction that when cases are consolidated for trial, although it becomes necessary to make only one record, the cases remain separate suits and retain their distinctiveness throughout the trial and appellate proceedings.") (citations omitted); *see also Pack v. Newman*, 232 N.C. 397, 400-01, 61 S.E.2d 90, 92 (1950) (consolidated suits "did not become one action. They remained separate suits.")(citation omitted).

¶ 38    The Association cannot show "injury or prejudice" arising out of the trial court's

denial of their motion to consolidate the DOT Action, 15 CVS 16076, and 16 CVS 15136. The trial court did not abuse it discretion in denying the motion to consolidate the DOT action with the other two previously consolidated actions. This portion of the trial court's order is affirmed.

## VI. Conclusion

¶ 39 Viewed in the light most favorable to the Association and giving it the benefit of any disputed inferences, Developer was not entitled to summary judgment and the allocation of funds based upon disputed facts in the appraisals. These genuine issues of material fact preclude and survive Developer's motion for summary judgment.

¶ 40 The trial court did not abuse its discretion in denying the Association's motion to consolidate the DOT action with the remaining actions. The property taken and valuation of the takings issues in the DOT action have been resolved and reduced to a sum certain by stipulation and consent of the parties. This amount is subject to the adjudication and allocation of the Developer's and the Association's rights in the remaining consolidated actions.

¶ 41 The trial court's amended orders are reversed in part on summary judgment for Developer and allocation of funds, affirmed in part on consolidation, and remanded for further proceedings or trial.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.

Chief Judge STROUD and Judge GORE concur.